# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KINGMAN PARK CIVIC ASSOCIATION,

   Plaintiff,

      v.

VINCENT C. GRAY,

   Defendant.

Civil Action No. 13-990 (CKK)

## MEMORANDUM OPINION
(August 26, 2013)

Plaintiff Kingman Park Civic Association ("Kingman Park") filed suit against Vincent C. Gray in his official capacity as the Mayor of the District of Columbia, challenging various aspects of the District's plan to construct a streetcar line in the Northeast quadrant of the District of Columbia. Presently before the Court is the Plaintiff's [19] Motion for Leave to File Second Amended Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds the Plaintiff's proposed amendments would be futile. Therefore, the Plaintiff's motion is DENIED.

## I. BACKGROUND

*A.    Factual Background*

The District of Columbia intends to construct a "a surface fixed rail and streetcar public transportation network," comprised of eight lines extending across 37 miles. Def.'s Ex. A (Nicholson Decl.) ¶ 4; *see also* DC's Transit Future Sys. Plan Final Report, April 2010. The first

---

[1] Pl.'s Mot., ECF No. [19]; Def.'s Opp'n, ECF No. [21]; Pl.'s Reply, ECF No. [22]; Def.'s Mot. to Strike and Sur-Reply, ECF No. [23]; Pl.'s Opp'n to Def.'s Mot. to Strike, ECF No. [24].

leg of the system consists of 2.2 miles of track along H Street and Benning Road in the Northeast quadrant of the District, connecting Benning Road to Union Station (hereinafter the "H Street line"). Nicholson Decl. ¶ 7. Construction on the H Street line began in 2008 with new parking lanes, sidewalks, street lights, reconstructed roadways, streetcar tracks, and pole foundations. Nicholson Decl. ¶ 10. The streetcars "will be powered by quiet electric motors, and use a pole and pantograph to collect power from an electrified wire that is suspended approximately twenty feet over the lane on which it runs." Def.'s Opp'n at 4. At some point this month, the District will begin installing poles and overhead contact wires for the overhead cantilever system that will power the streetcars. Nicholson Decl. ¶ 12. Installation of the overhead cantilever system is expected to be completed in late September or early October of this year. *Id*.

The District of Columbia Department of Transportation ("DDOT") intends to build a "car barn" training center on the grounds of the Joel Elias Spingarn Senior High School (the "Spingarn campus"), located on the 2500 block of Benning Road, Northeast. Nicholson Decl. ¶ 14. Spingarn Senior High School was a public school prior to its closure in July 2013. *Id.* at ¶ 15. In November 2012, the District of Columbia Historic Preservation Review Board designated Spingarn High School as an historic landmark in the District of Columbia Inventory of Historic Sites. Am. Compl. ¶ 31. The car barn will be used to house streetcars while not in operation, and will also serve as "an operations base and maintenance facility" where workers will be trained to repair streetcars. Nicholson Decl. ¶ 16. In late June 2013, the District began constructing tracks and temporary facilities to enable system testing and certification. *Id.* at ¶ 20. Excavation of the planned car barn site was set to begin the week of July 15, 2013. *Id.* at ¶ 23. Five streetcars are scheduled to be delivered to the Spingarn campus in October 2013. *Id.* at ¶ 21. Construction of the permanent car barn structure will begin "this Fall," and the District

expects the car barn to be completed in the summer of 2014. *Id.* at ¶ 22.

The District plans to install three "traction power substations" to provide power along the H Street line. Nicholson Decl. ¶ 13; Compl., Ex. 3 (DC Streetcar Sys. Plan: H St/Benning Rd & Future Segments & Exts.) at 12; Pl.'s Reply, Ex. 3 (DDOT, Traction Power Supply Distribution). One of the substations is expected to be installed on the Spingarn campus. Nicholson Decl. ¶ 13; *see also* Compl., Ex. 3 at 12 (noting the substation location for the eastern end of the H Street line is near the intersection of Benning Road and 26th Street, Northeast).[2] The substation will only operate while the streetcars are in service. Def.'s Opp'n at 5 (citing Car Barn Training Ctr. Info. & FAQs, Spring 2013, at 3). The "underground infrastructure" for each of three substations is currently being installed. Nicholson Decl. ¶ 13. To date, none of the substations have been installed, but all three substations have been purchased and are being manufactured. *Id*. The substation to be installed on the Spingarn campus is scheduled to be delivered on October 22, 2013. *Id*.

B.  *Procedural History*

The Plaintiff filed suit on June 28, 2013, and simultaneously filed a motion for a temporary restraining order ("TRO") and preliminary injunction seeking to enjoin the installation of overhead wires on H Street/Benning Road and the construction of the car barn on Spingarn High School. The Plaintiff's original Complaint asserted nine claims, including equal protection violations (pursuant to 42 U.S.C. § 1983), and violations of the National Historic Preservation Act, the District of Columbia Comprehensive Plan, District of Columbia Zoning law, District of

---

[2] The other substations for the H Street line will be installed on 2nd Street, NE "[u]nder the East Abutment of the H Street Bridge (Hopscotch Bridge) behind the existing closure wall," and on the Southwest corner of H and 12th Streets "in the Public Space directly adjacent to Kahn's Barbeque Restaurant." Nicholson Decl. ¶ 13.

Columbia Environmental Policy Act of 1989, Federal-aid Highway Program, the District of Columbia Historic Landmark and Historic District Protection Act of 1978, and the District of Columbia Home Rule Charter. The Plaintiff further alleged that the Transportation Infrastructure Emergency Amendment Act of 2010, which authorized the installation of the overhead wires, was unconstitutional. The Plaintiff subsequently filed an Amended Complaint (and amended motions for emergency relief) challenging the installation of the electrical substation on the Spingarn campus, and adding an additional claim for violations of the District of Columbia Human Rights Act.

Upon consideration of the Plaintiff's motions for emergency relief, the Court found that the Plaintiff was not likely to succeed in showing it has standing to raise claims on behalf of its members, but the Plaintiff was likely to show that it had organizational standing to challenge construction on the site of Spingarn Senior High School. With respect to the merits of the Plaintiff's various causes of action, the Court held that the Plaintiff was not likely to succeed on any of its claims for a number of reasons, including that the H Street/Benning Road line did not receive federal funding and is thus no subject to the requirements of the National Historic Preservation Act or the Federal-Aid Highway Program, and that Federal Courts in this District routinely decline to hear challenges to claims arising under District of Columbia Zoning laws and the local historic preservation statute. Moreover, the Plaintiff failed to identify any *irreparable* injury attributable to the Defendant's actions that the Plaintiff would suffer absent emergency relief, and the balance of the equities weighed heavily against granting the injunction. Accordingly, the Court denied the Plaintiff's motion for emergency relief, and ordered the Defendant to file its answer or otherwise respond to the Amended Complaint. Following the Court's denial of its motion for emergency relief, Plaintiff filed the present motion for leave to

file a second amended complaint. The Plaintiff's motion seeks to amend the operative complaint to include two additional claims for violations of the Clean Air Act and the Fair Housing Act.

## II. LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court "may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Securities Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). "An amendment is futile if the proposed claim would not survive a motion to dismiss." *Commodore-Mensah v. Delta Airlines, Inc.*, 842 F. Supp. 2d 50, 52 (D.D.C. 2012) (citation omitted). Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

## III. DISCUSSION

The Plaintiff seeks to amend the operative complaint to include two new claims: Count XI, alleging the Defendant violated the Clean Air Act, and Count XII, alleging the Defendant

violated the Fair Housing Act.[3]  Acknowledging that it failed to satisfy pre-suit notice requirements, the Plaintiff subsequently withdrew its request to add Count XI.  Therefore, the only remaining question for the Court is whether the Plaintiff should be granted leave to file a second amended complaint asserting a new claim under the Fair Housing Act.  The Defendant urges the Court to deny the Plaintiff leave to amend the operative complaint for two reasons: (1) the Plaintiff's proposed Fair Housing Act claim would not survive a motion to dismiss for failure to state a claim; and (2) the Plaintiff failed to establish it has standing to assert a claim under the Fair Housing Act.  The Court addresses each argument in turn.[4]

       A.       *Putative Count XII Fails to State A Claim for Relief Under the Fair Housing Act*

The Defendant logically assumes that the Plaintiff intends to raise a claim under section 804 of the Fair Housing Act, which makes it unlawful to, among other things, "*refuse to sell or rent* after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a) (emphasis added).  This provision "reach[es] only discrimination that adversely affects the availability of housing," *not* habitability.  *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 719 (D.C. Cir. 1991).  Moreover, this section generally applies only to the "providers of housing, such as owners and landlords, and [] municipal service providers."  *Id.*

Count XII of the Plaintiff's proposed second amended complaint asserts in the heading that "The District's Spingarn streetcar barn, maintenance facility and electrical substation

---

[3] The proposed second amended complaint does not make any substantive changes to the general factual allegations or Counts I-X.

[4] Ordinarily the Court would address the issue of standing first.  Given the vague nature of the (putative) claim at issue, the Court finds it useful to address standing second.

construction violates the Fair Housing Act." Pl.'s Proposed Second Am. Compl., ECF No. [19-1], at 30. However, none of the numbered paragraphs that follow even refer to the Fair Housing Act or the *availability* of housing as a result of the streetcar project.[5] Rather, Count XII simply repeats the same allegations set forth in the prior counts, for example that (1) the Defendant failed to give proper notice of the proposed construction on the Spingarn campus, *id.* at ¶ 116; (2) the Defendant failed to prepare an environmental impact statement, *id.* at ¶ 117; (3) the construction on the Spingarn campus violates District of Columbia zoning laws, *id.* at ¶ 118; and (4) the construction violates the District of Columbia Comprehensive plan, *id.* at ¶ 124. The Plaintiff includes several new allegations, including that the construction on the Spingarn campus will deprive local residents of green space and adversely affect pedestrian traffic, but none of these allegations relate to the availability of housing as a result of the Defendant's actions. *Id.* at ¶¶ 119, 122.

In its reply brief, the Plaintiff does not even attempt to argue that the allegations in the proposed second amended complaint state a claim under section 804 or any other provision of the Fair Housing Act. Rather, the Plaintiff argues that Executive Order 12898

> requires certain federal agencies, including HUD, to consider how federally assisted projects may have disproportionately high and adverse human health or environmental effects on minority and low-income populations. Under the Fair Housing Act, the District is held to the same standard, when the Defendant violates the equal protection and due process rights of the Plaintiff.

Pl.'s Reply at 5. Executive Order 12898, signed by President William Jefferson Clinton on February 11, 1994, provided that "[t]o the greatest extent practicable and permitted by law, every

---

[5] In fact, the only other references to the Fair Housing Act in the entire putative second amended complaint appear in paragraph 2, which simply lists all of the claims in the case, and paragraph 3, which outlines the basis for the Court's jurisdiction. Paragraphs 2 and 3 do not cite any specific provisions of the Fair Housing Act the Defendant purportedly violated, but rather both cite to the statute in its entirety.

7

"Federal agency shall make achieving environmental justice part of its mission by identifying and addressing, as appropriate, disproportionately high and adverse human health or environmental effects of its programs, policies, and activities on minority populations and low-income populations." The Order required agencies to convene an interagency working group, and instructed each agency to create an "environmental justice strategy." Nothing in the Executive Order placed any burdens on state or local agencies, or otherwise created new obligations for the District of Columbia under the Fair Housing Act. Count XII of the proposed second amended complaint would not survive a motion to dismiss for failure to state a claim, therefore granting the Plaintiff leave to amend the operative complaint at this stage would be futile.

      B.      *Plaintiff Failed to Show It Has Organizational Standing to Bring Count XII*

The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). First, the plaintiff must have suffered an "injury-in-fact," that is, "'an invasion of a legally protected interest' that is (i) 'concrete and particularized' rather than abstract or generalized, and (ii) 'actual or imminent' rather than remote, speculative, conjectural or hypothetical." *In re Navy Chaplaincy*, 534 F.3d 756, 759-60 (D.C. Cir. 2008) (quoting *Lujan*, 504 U.S. at 560). Second, the asserted injury must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (citation omitted). Third, the plaintiff must demonstrate redressability: "[i]t must be likely that a favorable decision by the court would redress the plaintiff's injury." *Id*. at 561. It is axiomatic that the "party invoking federal jurisdiction bears the burden of establishing the[ ] elements" of constitutional standing. *Id.*

Kingman Park may sue on its own behalf if it "meet[s] the general standing requirements

applied to individuals." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995). Kingman Park may also sue on behalf of its members if it demonstrates "associational standing." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). Associational standing requires the organization to show that

> (1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.

*Id.* "An association's standing to sue in the latter circumstance is generally referred to as 'associational' or 'representational' standing." *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 600 (D.C. Cir. 1998).

Curiously, the Plaintiff asserts in its reply that it has "representational and associational standing." Pl.'s Reply at 3. The Court assumes the Plaintiff meant to argue that it has both *organizational* and associational standing. However, the Plaintiff fails to respond to the Defendant's argument that it failed to establish organizational standing because insofar as the Plaintiff failed to identify any "discrete programmatic concerns [that] are being directly and adversely affected" by the challenged action. Def.'s Opp'n at 6 (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1433). The Plaintiff generally assets that its mission "is to protect the health, safety and welfare of its members, among other things." Pl.'s Reply at 3. The allegation that the Defendant's conduct has interfered with the Plaintiff's general mission "is the type of abstract concern that does not impart standing." *Nat'l Taxpayers Union*, 68 F.3d at 1433.

With respect to associational standing, the Defendant argues that "KPCA does not identify a single one of its members who will be . . . 'deprive[d]' of any of the identified properties." Def.'s Opp'n at 5. Although framed as an issue of whether any of the organization's members have suffered an "injury-in-fact," the Defendant in essence suggests that

the Plaintiff, and its members, lack *prudential* standing to bring a claim under the Fair Housing Act. The doctrine of prudential standing concerns whether the interest an organization seeks to protect "is arguably within the zone of interests to be protected or regulated by the statute . . . in question or by any provision integral[ly] relat[ed] to it." *Conf. Grp., LLC v. Fed. Commc'ns Comm'n*, --- F.3d ---, 2013 WL 3305698, at *5 (D.C. Cir. 2013) (citations omitted, alterations in original). Neither party sufficiently addressed the issue of the Plaintiff's prudential standing for purposes of the Fair Housing Act, therefore the Court declines to find the Plaintiff's proposed amendment would be futile on the grounds the Plaintiff lacks standing. Nevertheless, because the Plaintiff's proposed second amended complaint would not survive a motion to dismiss for failure to state a claim, the Plaintiff shall not be permitted to amend the operative complaint as proposed in the present motion.

## IV. CONCLUSION

For the foregoing reasons, the Court finds putative Count XII would not survive a motion to dismiss for failure to state a claim, making the Plaintiff's proposed amendments to the operative complaint futile. Accordingly, the Plaintiff's [19] Motion for Leave to File Second Amended Complaint is DENIED. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE