**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————

**KINGMAN PARK CIVIC ASSOCIATION,**  )
  )
      **Plaintiff,**  )    **Civil Action No. 13-990 (CKK)**
  )
      **v.**  )
  )
**VINCENT C. GRAY, In His Capacity as**  )
**Mayor of the District of Columbia,**  )
  )
      **Defendant.**  )
———————————————————)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT, OR, IN THE ALTERNATIVE,
<u>FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................ iv

**PRELIMINARY STATEMENT** ................................................................................. 1

**FACTUAL BACKGROUND** ..................................................................................... 1

**STANDARD OF REVIEW** ....................................................................................... 1

   I.    Fed. R. Civ. P. 12(b)(1) ..................................................................................... 1

  II.    Fed. R. Civ. P. 12(b)(6) ..................................................................................... 2

 III.    Fed. R. Civ. P. 56 .............................................................................................. 3

**ARGUMENT** ............................................................................................................ 3

   I.    PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS ....................... 3

       A.  Counts IV, V, and IX of the Amended Complaint Must be Dismissed
          Pursuant to 12(b)(1) Because KPCA Does Not Allege *Any* Actual Injury ............. 6

       B.  Counts I and III of the Amended Complaint Must Be Dismissed in Their
          Entirety and Count X Must Be Dismissed In Part Because KPCA Does
          Not Have Standing to Challenge the Installation of Overhead Streetcar
          Wires ................................................................................................................ 8

       C.  Count VI of the Amended Complaint Must Be Dismissed Because KPCA
          Has Not Identified Any Member Who Will Be Injured As A Result of the
          District's Alleged Failure to Prepare an EIS .................................................. 10

       D.  Counts II, VII and VIII Must Be Dismissed in Their Entirety and Count
          X Must be Dismissed In Part Because KPCA's Assertions of Injury With
          Respect to the Location of the CBTC Are Merely Generalized Grievances ....... 13

  II.    THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE
       CLAIM FOR RELIEF AND MUST BE DISMISSED; ALTERNATIVELY,
       THE DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
       ON PLAINTIFF'S CLAIMS ........................................................................... 16

       A.  Count I of the Amended Complaint Must Be Dismissed to the Extent It
          Asserts that the District Legislation Authorizing the Installation of
          Overhead Wires Violates Federal Law ......................................................... 16

**B. Counts I and II Must Be Dismissed Because KPCA Has Not Alleged A Plausible Claim Under the Equal Protection Clause of the Fifth Amendment** .................................................................................................19

    1. KPCA Cannot Show that the 2010 Act Treats a Similarly Situated Neighborhood Differently from Kingman Park Without a Rational Basis............20

    2. KPCA Has Not Set Forth Factual Allegations Suggesting that DDOT's Selection of Spingarn for the CBTC Site Was Without a Rational Basis .............23

**C. Count II of the Amended Complaint Must Be Dismissed Because KPCA Has Not Plausibly Alleged that Section 106 of the NHPA Applies to the H Street and Benning Road Line**................................................................................23

**D. Count IV of the Amended Complaint Must Be Dismissed Because the District of Columbia Comprehensive Plan Does Not Provide A Private Right of Action in Federal Court**................................................................................24

**E. Count V of the Amended Complaint Must Be Dismissed Because this Court Lacks Jurisdiction Over KPCA's Claim for Violation of the District's Zoning Law** ......................................................................................25

**F. Count VI of the Amended Complaint Must Be Dismissed Because KPCA Does Not Set Forth Factual Allegations Demonstrating that DDOT Was Required to Complete an EIS for the CBTC** .........................................................26

**G. Count VII of the Amended Complaint Must Be Dismissed Because the Federal Aid Highway Act Does Not Provide for a Private Right of Action Against the District** .....................................................................................28

**H. Count VIII of the Amended Complaint Must Be Dismissed Because The Landmark Act Does Not Provide a Private Right of Action in Federal Court** ....................................................................................................29

**I. Count IX of the Amended Complaint Must Be Dismissed Because KPCA Has Not Alleged a Plausible Claim that the District Failed to Comply with the Requirements of D.C. Code § 1-309.10** ............................................................30

    1. KPCA Cannot State a Claim Under the ANC Notice Requirement Because It Admits that ANC 5B Received *Actual* Notice of the Challenged Actions .......31

    2. KPCA Otherwise Has Failed to State a Claim Under D.C. Code § 1-309.10 Because It Has Not Identified the Written Recommendations that the District Allegedly Failed to Accord "Great Weight".......................................32

**J.  Count X of the Amended Complaint Must Be Dismissed Because KPCA Has Not Stated a Plausible Claim that the Planned Construction at the Spingarn Campus Violates the D.C. Human Rights Act** ........................................34

**CONCLUSION** .........................................................................................................36

## TABLE OF AUTHORITIES

**Cases**

*Adrand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) ............................................................ 21

*Alexander v. First Wind Energy, LLC*, No. 2:11–cv–00364–GZS, 2012 WL 681838 (D. Me Feb. 28, 2012) ......................................................................................................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 2, 28, 29, 34

*Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667 (D.C. Cir. 2013) ..................................... 11

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ....................................................................................... 19

*Boykin v. Gray*, 895 F. Supp. 2d 199 (D.D.C. 2012) ................................................................... 35

*Brehm v. Dep't of Defense*, 577 F. Supp. 2d 446 (D.D.C. 2008) ................................................... 3

*Californians for Renewable Energy v. U.S. Dep't of Energy*, 860 F. Supp. 2d 44 (D.D.C. 2012) 6

*Celotex v. Cattret*, 477 U.S. 317 (1986) ......................................................................................... 3

*Chamber of Commerce v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) .......................................... 6, 8, 10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......................................................................... 5

*Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239 (D.C. Cir.1983) .................................................. 14

*Comm. for Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177 (D.C. 1982) ......... 30, 31

*Conf. Grp., LLC v. Fed. Commc'ns Comm'n*, --- F.3d ---, 2013 WL 3305698 (D.C. Cir. 2013)... 5

*DamlerChrysler v. Cuno*, 547 U.S. 332 (2006) .............................................................................. 5

*Dist. of Columbia v. The Greater Washington Cent. Labor Council, AFL-CIO*, 442 A.2d 110 (D.C. 1982) ................................................................................................................................ 18

*Dist. of Columbia, Dep't of Public Works v. L.G. Indus.*, 758 A.2d 950 (D.C. 2000) ................ 25

*Donnelly Assocs. v. Dist. of Columbia Historic Preservation Review Bd.*, 520 A.2d 270 (D.C. 1987) ......................................................................................................................................... 29

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ................................. 2

*Embassy Real Estate Holdings, LLC v. D.C. Mayor's Agent for Historic Preservation*, 944 A.2d 1036 (D.C. 2008) ...................................................................................................................... 29

*English v. Dist. of Columbia*, 815 F. Supp. 2d 254 (D.D.C. 2011) ............................................. 26

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268 (D.C. Cir. 1994) 5

*Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) ......................................... 7, 12

*Friends of Animals v. Salazar*, 626 F. Supp. 2d 102 (D.D.C. 2009) ........................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)............. 9, 14

*Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21 (D.C. Cir. 2002) ................................................. 33

*Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ.*, 536 A.2d 1 (D.C. 1987)35

*Gillam v. Barton*, No. 05-35232, 2006 WL 2497785 (9th Cir. Aug. 29, 2006) ......................... 16

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ......................................................... 14, 15

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507 (D. Mass. 2011).... 9

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249 (D.C. Cir. 2005) .............. 2

*Kelley v. Dist. of Columbia*, 893 F. Supp. 2d 115 (D.D.C. 2012) ............................................... 19

*Kopff v. Dist. of Columbia Alcoholic Beverage Control Bd.*, 381 A.2d 1372 (D.C. 1977) .... 31, 32

*Lee v. Thornburgh*, 877 F.2d 1053 (D.C. Cir. 1989) ................................................................... 23

*Lewis v. Casey*, 518 U.S. 343 (1996) ............................................................................................. 5

*Lightfoot v. Dist. of Columbia*, 448 F.3d 392 (D.C. Cir. 2006) ............................................ 25, 29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................................. 5, 6, 7

*Macharia v. United States*, 334 F.3d 61 (D.C. Cir. 2003) ............................................................ 1

*McConnell v. United States*, 537 A.2d 211 (D.C. 1988) ............................................................. 18

*Mich. Gambling Opposition v. Norton*, 477 F. Supp. 2d 1 (D.D.C. 2007) ................................... 27

*Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6 (D.C. Cir. 2011) ............................................ 12

*Nat'l Org. for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011) ................................................ 5

*Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428 (D.C. Cir 1995) ...................... passim

*Neighbors Against Foxhall Gridlock v. Dist. of Columbia Bd. of Zoning*, 792 A.2d 246 (D.C. 2002) .................................................................................................................................. 32

*New York Envtl. Justice Alliance v. Giuliani*, 50 F. Supp. 2d 250 (S.D.N.Y 1999) .................... 15

*Plyler v. Doe*, 457 U.S. 202 (1982) ............................................................................................. 19

*Quincy Park Condo. Unit Owners' Ass'n v. Dist. of Columbia Bd. of Zoning*, 4 A.3d 1283 (D.C. 2010) .................................................................................................................................. 30

*Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750 (D.C. Cir. 1995) .................. 24

*Shiflett v. Dist. of Columbia Bd. of Appeals and Review*, 431 A.2d 9 (D.C. 1981) ..................... 31

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) .................................................................... 6

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ........................................................... 14

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .............................................................. passim

*Techworld Dev. Corp. v. D.C. Pres. League*, 648 F. Supp. 106 (D.D.C. 1986) .......................... 18

*Tenley and Cleveland Park Emergency Comm. v. Dist. of Columbia Bd. of Zoning Adjustment*, 550 A.2d 331 (D.C. 1988) ........................................................................................... 24, 25

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) ............................................ 2, 28

*U.S. Ecology, Inc. v. U.S. Dep't of the Interior*, 231 F.3d 20 (D.C. Cir. 2000) ............................ 1

*United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968 (W.D. Mich 2003) .............. 2

*Walker v. Washington*, 627 F.2d 541 (D.C. Cir. 1980) ................................................................ 1

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................................... 5, 15

*Whitemore v. Arkansas*, 495 U.S. 149 (1990) .............................................................................. 8

*Willowbrook v. Olech*, 528 U.S. 562 (2000) ............................................................................... 19

*Women Prisoners of D.C. Dep't of Corrections v. Dist. of Columbia*, 93 F.3d 910 (D.C. Cir. 1996) .................................................................................................................................. 20

*Worley v. Giuliani*, No. 00-9126,  2001 WL 533649 (2d Cir. May 17, 2001) ............................ 15

*YATA v. Dist. of Columiba Zoning Comm'n*, 856 A.2d 1079 (D.C. 2004) ................................... 7

**Statutes**

10 DCMR § 616.2 ........................................................................................................................ 27

20 DCMR § 7204.2 ...................................................................................................................... 27

23 U.S.C. § 138 ........................................................................................................................... 28

49 U.S.C. § 303 ........................................................................................................................... 28

D.C. Code § 1-201(a) .................................................................................................................. 17

D.C. Code § 1-203.02 ............................................................................................................ 17, 18

D.C. Code § 1-204.04 .................................................................................................................. 17

D.C. Code § 1-309 ................................................................................................................. 30, 32

D.C. Code § 206.02 ..................................................................................................................... 17

D.C. Code § 2-1402.73 .......................................................................................................... 34, 35

D.C. Code § 2-510 ................................................................................................................. 25, 29

D.C. Code § 34-1901 ............................................................................................................. 17, 18

D.C. Code § 6-1101 ..................................................................................................................... 29

D.C. Code § 6-1112 ..................................................................................................................... 29

D.C. Code § 6-641.07 .................................................................................................................. 25

D.C. Code § 8-109 ....................................................................................................................... 26

D.C. Code § 9-109.03 ................................................................................................ 27
D.C. Code. § 9-1171 ................................................................................................... 21
D.C. Code § 9-1172 .................................................................................................... 21
D.C. Code § 9-1173 .................................................................................................... 21

**Other Authorities**
U.S. Const. art. I, s. 8, cl. 17 ..................................................................................... 17

**Rules**
Fed. R. Civ. P. 12(b)(1)................................................................................................ 1
Fed. R. Civ. P. 56(c) ................................................................................................... 3

Defendant, Mayor Vincent C. Gray ("the District"),[1] by and through his undersigned counsel, hereby respectfully submits this memorandum of points and authorities in support of its motion to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56.

## FACTUAL BACKGROUND

The factual background relevant to this motion was previously set forth in the District's Opposition to Plaintiff's Amended Motion for Temporary Restraining Order, Preliminary Injunction, and Waiver of Bond.  Doc. No. 8.  In the interest of brevity, the District does not recite those facts, but incorporates them herein by reference.

## STANDARD OF REVIEW

### I.    Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of claims for which the complaint does not set forth sufficient allegations to establish the court's jurisdiction over the subject matter of the claims presented.  Fed. R. Civ. P. 12(b)(1).  The party seeking to invoke the jurisdiction of a federal court has the burden of establishing jurisdiction.  *U.S. Ecology, Inc. v. U.S. Dep't of the Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  As the Court must be assured that it is acting within the scope of its jurisdictional authority, it must give a plaintiff's factual allegations closer scrutiny when resolving a motion under 12(b)(1) than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  It is well-established that, in ruling on a motion to dismiss under Rule 12(b)(1), a court

---

[1] Mayor Gray is sued in his official capacity only.  It is well-settled that a suit against a government official in his or her official capacity is, in actuality, a suit against the employing government.  *Walker v. Washington*, 627 F.2d 541, 544 (D.C. Cir. 1980).

may consider materials outside of the pleadings.  *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.     Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading that offers merely "labels and conclusions," a "formulaic recitation of the elements of a cause of action," "naked assertions devoid of further factual enhancement," or an "unadorned, the-defendant-unlawfully-harmed-me accusation," is not sufficient to state a claim under Rule 12(b)(6).  *Id.*  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Yet, when a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*

In evaluating a Rule 12(b)(6) motion to dismiss, a court "'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice.'"  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).  Public records and government documents are generally subject to judicial notice, "includ[ing] public records and government documents available from reliable sources on the Internet."  *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich 2003) (collecting cases).

**III.    Fed. R. Civ. P. 56**

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Brehm v. Dep't of Defense*, 577 F. Supp. 2d 446, 448 (D.D.C. 2008).  "[C]ourt[s] must look to the substantive law on which each claim rests" in determining which facts are material.  *Brehm*, 577 F. Supp. 2d at 448 (citation omitted).  "A genuine issue is one whose resolution could establish an element of a claim or defense, and, therefore, affect the outcome of the action."  *Id.*  (internal quotation marks and citation omitted).

To survive summary judgment, the nonmoving party must present evidence to support each essential element of his or her claims.  *Celotex v. Cattret*, 477 U.S. 317, 322-23 (1986).  It "may not rely solely on allegations or conclusory statements" and must instead "present specific facts that would enable a reasonable jury to find in its favor."  *Brehm*, 577 F. Supp. 2d at 448 (citations omitted).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex,* 477 U.S. at 323.

<u>**ARGUMENT**</u>

**I.    PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS**

The Amended Complaint set forth ten separate causes of action challenging "the District's proposed plan to construct streetcar overhead wires on H Street and Benning Road, Northeast, and to construct a streetcar barn maintenance facility and an electrical substation on the grounds of historic Spingarn Senior High School in Washington, D.C."  Am. Compl. ¶ 1.

Kingman Park Civic Association ("Plaintiff" or "KPCA") claims that various environmental and aesthetic harms will result from the above activities.  In particular, KPCA alleges that:

- The installation of overhead wires will "adversely affect the health" of individuals in the Kingman Park neighborhood (*id.* ¶¶ 44, 64-65), and "partially destroy the scenic view" of the Langston Terrace Dwellings and Langston Golf Course (*id.* ¶¶ 64-65);

- The "excavation and construction work on the Spingarn Site" will "release dust and other contaminants into the air" that will "affect the health of residents and visitors in the community," and create "storm water and sewage run-off" and "vibration" that will damage "over 500 homes" (*id.* ¶ 84);

- The planned Car Barn and Training Center ("CBTC") will "affect the historic site lines, design, concept and character of Spingarn High School and the adjacent schools, as well as the historic Langston Dwellings and Langston Golf Course" (*id.* ¶¶ 87, 90), and will "eradicate sustainable green space on the campus and eliminate the open space and vista along Benning Road" (*id.* ¶¶ 87, 97).

KPCA did not attach *any* exhibits to its Amended Complaint.  In connection with its various motions in this matter, however, KPCA has submitted declarations from five alleged members of the association:  Joan Johnson, Allen Green, Dr. Jean Marie Miller, Bernice Blacknell, and Ester D. Hardesty.[2]  *See* Doc. No. 9-1; Doc. No. 22-2.  Neither these declarations, nor the allegations in the Amended Complaint, however, are sufficient to demonstrate that KPCA or its members will suffer an injury-in-fact as a result of either the installation of overhead wires or the planned construction at Spingarn.  As a result, KPCA has not established

---

[2] In support of its Reply to the District's Opposition to its Amended Motion for Temporary Restraining Order, Preliminary Injunction and for Waiver of Bond, KPCA also attached declarations from James R. Wiggins, Sr., Charlie L. Murray, Jr., and Veronica E. Raglin.  *See* Doc. No. 9-1.  As none of these declarations indicate that the declarant is a member of KPCA, however, the Court should disregard them for purposes of determining KPCA's associational standing.  In addition, although KPCA attached to its initial complaint an Affidavit of Veronica Raglin (*see* Complaint, Ex. 4), this declaration was neither attached to nor referenced in the Amended Complaint.  The Court therefore should treat this declaration as abandoned.  In any case, however, the Court has already correctly determined that this Raglin Affidavit does not demonstrate KPCA's standing in this matter.  *See* Doc. No. 17 [Mem. Op.], at 8 n.4.

its standing in this matter, and the Amended Complaint must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

The doctrine of standing requires "federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). In order to have standing, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). A plaintiff "cannot rest his claim on the rights or interests of third parties" or assert a harm that is a generalized grievance "shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499; *see also Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994) (noting that plaintiffs' reference to "third parties . . . does not help [] establish standing; to satisfy the requirements of Article III, they must allege that they themselves are likely to suffer future injury") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). Further, in order to satisfy so-called "prudential" standing, the interest a plaintiff seeks to protect must be "arguably within the zone of interests to be protected or regulated by the statute . . . in question or by any provision integral[ly] relat[ed] to it." *Conf. Grp., LLC v. Fed. Commc'ns Comm'n*, --- F.3d ---, 2013 WL 3305698, at *5 (D.C. Cir. 2013) (citations omitted, alterations in original).

It is well-established that "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343 n.6 (1996). Rather, "a plaintiff must separately prove standing 'for each claim he seeks to press.'" *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 47 n. 15 (1st Cir. 2011) (quoting

5

*DamlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006)). It is axiomatic that the "party invoking federal jurisdiction bears the burden of establishing the[ ] elements" of constitutional standing. *Lujan*, 504 U.S. at 561.

An association like KPCA can demonstrate its standing in one of two ways.  First, KPCA may sue on its own behalf if it "meet[s] the general standing requirements applied to individuals."  *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir 1995). Second, KPCA may establish standing to sue on behalf of its members if it can demonstrate that:

> (1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.

*Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).  To satisfy the first prong, it is "not enough to aver that unidentified members have been injured."  *Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011).  Rather, "the organization must name at least one member who has suffered the requisite harm."  *Californians for Renewable Energy v. U.S.  Dep't of Energy*, 860 F. Supp. 2d 44, 48 (D.D.C. 2012) (JEB); *see also Summers*, 555 U.S. at 498-99.

KPCA has not satisfied either test for standing for any of its ten causes of action, and therefore the Court lacks subject matter jurisdiction over this matter.

### A.      Counts IV, V, and IX of the Amended Complaint Must Be Dismissed Pursuant to 12(b)(1) Because KPCA Does Not Allege *Any* Actual Injury.

Count IV and V of the Amended Complaint assert, respectively, that the "proposed maintenance garage, electrical substation, and overhead wires construction violates the District's Comprehensive Plan" (Am. Compl. ¶ 72), and that the placement of the car barn training center ("CBTC") at Spingarn "violates District of Columbia zoning law" (*id.* ¶ 78).  Count IX appears to allege that the District failed to give "great weight" to Advisory Neighborhood Commission

("ANC") 5B's opposition to locating the CBTC on the Spingarn campus, as required by District law (*id.* ¶ 95). These claims must be dismissed because they fail to allege any injury to a concrete interest that will result from the purported legal violations.

The Supreme Court has recognized that "an injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable[.]" *Lujan*, 504 U.S. at 575-76. Similarly, the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*— is insufficient to create Article III standing." *Summers*, 555 U.S. at 496; *YATA v. Dist. of Columiba Zoning Comm'n*, 856 A.2d 1079, 1084 (D.C. 2004) (holding that alleged failure to accord "great weight" to ANC testimony was a generalized grievance not sufficient to support standing). Rather, a plaintiff must show that the defendant's failure to abide by the procedure in question "will cause the essential injury to the plaintiff's own interest." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996) (en banc).

Here, the allegations set forth under Counts IV, V, and IX of the Amended Complaint do identify *any* concrete interest of KPCA or its members that allegedly will be injured by the District's conduct. Instead, these claims merely assert that the District has failed to comply with law, which is not sufficient to create Article III standing. *See YATA*, 856 A.2d at 1084 (holding that alleged failure to accord "great weight" to ANC testimony was a generalized grievance not sufficient to support standing). Accordingly, Counts IV, V, and IX of the Amended Complaint must be dismissed for lack of subject matter jurisdiction.

**B.      Counts I and III of the Amended Complaint Must Be Dismissed in Their Entirety and Count X Must Be Dismissed In Part Because KPCA Does Not Have Standing to Challenge the Installation of Overhead Streetcar Wires.**

Counts I and III of the Amended Complaint challenge the District's authorization and planned installation of overhead streetcar wires along H Street and Benning Road, as illegal under the U.S. Constitution and the National Historic Preservation Act, respectively.  Am. Compl. ¶¶ 40-41, 67.  In addition, Count X asserts that the installation of overhead wires, as well as the planned construction at Spingarn, violates the D.C. Human Rights Act.  *Id.* ¶ 101.  KPCA, however, does not have standing to challenge the overhead wires because it has not demonstrated that their installation will result in an injury-in-fact to the association or its members.

As an initial matter, the Amended Complaint does not identify any "discrete programmatic concerns" of KPCA that will be "directly and adversely affected" as a result of the planned overhead wires, such that the association would have standing to challenge them on its own behalf.  *See Nat'l Taxpayers Union*, 68 F.3d at 1433.  Rather, the allegations in the Amended Complaint suggest that KPCA's "programmatic concerns," if any, are limited to preserving Spingarn High School as a historic landmark.  *See* Am. Compl. ¶¶ 29, 32.  *See also* Memorandum Opinion (Jul. 29, 2013) ("Mem. Op."), at 8 ("Kingman Park's allegations with respect to the overhead wires are likely insufficient to establish organizational standing.").

KPCA asserts that the overhead wires will "adversely affect the health" of individuals in the Kingman Park neighborhood by exposing them to "electromagnetic radiation fields."  *Id.* ¶ 64.  Yet, the Amended Complaint does not identify any member of KPCA who allegedly will be injured by such exposure.  As it is "not enough to aver that unidentified members have been injured," this unsupported allegation is insufficient to demonstrate standing.  *Chamber of Commerce*, 642 F.3d at 199.  Further, as this Court has previously noted, none of the factual

declarations submitted on behalf of alleged KPCA members state that the declarant will be exposed to such "electromagnetic fields," much less be personally injured by such exposure. *See* Mem. Op., at 9.

Moreover, KPCA's unsupported assertions of adverse health effects are far too speculative and hypothetical to constitute the kind of "certainly impending" threatened future injury that is required to grant Article III standing. *Whitemore v. Arkansas*, 495 U.S. 149, 158 (1990). The Amended Complaint does not contain any allegations concerning the level or intensity of the "electric fields" that will be generated by the planned overhead wires, the particular level of exposure to "electric fields" that is dangerous, or that the proposed overhead wires will violate any federal or District health or safety standards. *Cf. In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (discussing reasons why plaintiff's assertions of threatened future injury were too speculative to support standing).

KPCA also asserts that the overhead wires will "partially destroy the scenic view" of the Langston Terrace Dwellings and Langston Golf Course (*id.* ¶¶ 64-65). Again, the Amended Complaint does not identify any KPCA member who would suffer a concrete injury as a result of this "partially destroy[ed]" view. Although the declarations of Joan Johnson, Allen Green, and Dr. Jean Marie Miller each contain a single, identical paragraph alleging that the wires "will adversely affect the clear and unobstructed views" of Spingarn, the Langston Terrace dwellings, the Langston Golf Course, and the Anacostia River (Johnson Decl. ¶ 2; Green Decl. ¶ 2; Miller Decl. ¶ 2), they do not allege that any of these three individuals derive any aesthetic or recreational value from the "clear and unobstructed views" of any of the four identified properties. *See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("[E]nvironmental plaintiffs adequately allege injury in fact when they aver that

they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity.").  Therefore, as this Court has previously, and correctly, recognized, this assertion is not sufficient to establish KCPA's standing to challenge the overhead wires.  *See* Mem. Op., at 9.

Accordingly, as KPCA has not demonstrated that the overhead streetcar wires will cause a concrete injury to the association or its members, it lacks standing to challenge their installation.  The Court, therefore, must dismiss, pursuant to Rule 12(b)(1), Counts I and III of the Amended Complaint in their entirety and Count X to the extent it seeks to challenge the overhead wires.

### C.    Count VI of the Amended Complaint Must Be Dismissed Because KPCA Has Not Identified Any Member Who Will Be Injured As A Result of the District's Alleged Failure to Prepare An EIS.

Count VI of the Amended Complaint contends that the District has failed to prepare an Environmental Impact Statement ("EIS") for the "proposed construction of a maintenance garage and storage facility," allegedly in violation of the District of Columbia Environmental Policy Act of 1989, D.C. Code § 1-809.01, *et seq.* ("DCEPA").  KPCA contends that, as a result of this procedural violation, the planned "excavation and construction work on the Spingarn Site" will "release dust and other contaminants into the air" that will "affect the health of residents and visitors in the community," and create "storm water and sewage run-off" and "vibration" that will damage "over 500 homes" (*id.* ¶ 84).[3]  Once again, these allegations are insufficient because the Amended Complaint does not identify any of the individuals who will allegedly suffer such injuries.  *Chamber of Commerce*, 642 F.3d at 199 (to establish standing it is "not enough to aver that unidentified members have been injured").

---

[3] In Count VI, KPCA does not make any allegation that the association itself will suffer an injury as a result of the District's alleged failure to prepare an EIS.

The declarations of Ms. Johnson, Mr. Green, and Dr. Miller each assert that "excavation work [will] adversely affect the air quality and [their] physical health" because "[t]here are many known hazardous substances . . . in the soil."  Johnson Decl. ¶ 6; Green Decl. ¶ 6; Miller Decl. ¶ 5.  In addition, Ms. Hardesty and Ms. Blacknell each state that they "believe" that the CBTC construction will "create hazardous air pollutants and other dangerous substances."  Blacknell Decl. ¶ 7; Hardesty Decl. ¶ 7.  None of these individuals, however, allege that they live or work in close proximity to the planned CBTC site on the Spingarn campus such that they might be exposed to any alleged hazardous material released by the construction activity, or that they will be forced to change their behavior in any manner.[4] *See* Mem. Op., at 10-11; *cf. Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 672 (D.C. Cir. 2013) ("Several members aver that they live or work in close proximity to smelters and have reduced their time outdoors in response to concerns about pollution—precisely the kinds of harms the Supreme Court has deemed sufficient to show injury in fact.").  Moreover, such conclusory assertions amount to nothing more than speculation in light of the fact that DDOT specifically investigated the potential impacts of planned excavation at the Spingarn CBTC site and did not find any evidence of hazardous materials.  Nicholson Decl. ¶ 24.

Similarly, the declarations of Ms. Johnson and Mr. Green each assert that the "[w]hen construction commenced on the streetcar tracks the vibration and noise caused cracks in the walls and foundation of [their] property." Johnson Decl. ¶ 3; Green Decl. ¶ 3.  These allegations are insufficient, however, because they "relate[] to past injur[ies] rather than imminent future

---

[4] Although Ms Hardesty states that she resides "in the Historic Langston Dwellings which is adjacent to, and directly behind Spingarn Senior High School" (Hardesty Decl. ¶ 2), she makes no assertion concerning her proximity to the planned CBTC construction site.   Indeed, a search on Google Maps reveals that Langston Terrace is not directly adjacent to the planned CBTC site, but in fact is several blocks away.

injur[ies] that are sought to be enjoined." *Summers*, 555 U.S. at 495.  Moreover, neither Ms. Johnson nor Mr. Green allege, or explain how, construction at Spingarn is likely to damage their respective properties located several blocks away.  *See* Mem. Op., at 10.

Moreover, the conclusory assertions of Ms. Johnson, Mr. Green, and Dr. Miller that they are "certain that the construction and excavation will cause damage to the hundreds of homes and businesses," (Johnson Decl. ¶ 5; Green Decl. ¶ 5; Miller Decl. ¶ 4(b)), does not satisfy the requirement that Kingman Park show a substantial probability that at least one of its members will suffer an injury-in-fact as a result of the construction at Spingarn.  *See* Mem. Op., at 10; *see also Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15 (D.C. Cir. 2011).  Indeed, such a conclusory assertion is entirely speculative in light of the fact that DDOT's assessment of the CBTC site found that there was no likelihood of foundation damage to nearby buildings. Nicholson Decl. ¶ 24.  Moreover, none of the declarations submitted by alleged KPCA members make any mention of "storm water and sewage run-off," much less allege that the declarant's property is likely to be damaged by such run-off from the CBTC site.

As KPCA has not identified a single one of its members who will be injured by the District's alleged failure to prepare an EIS for the "proposed construction of a maintenance garage and storage facility" at Spingarn, it lacks standing to maintain its claim under the DCEPA.  *See Summers*, 555 U.S. at 496 ("deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing"); *Florida Audubon Soc'y*, 94 F.3d at 664-65 (to establish standing, a plaintiff must show that a failure to abide by a procedural requirement "will cause the essential injury to the plaintiff's own interest").  Accordingly, Count VI of the Amended Complaint must be dismissed pursuant Rule 12(b)(1).

**D. Counts II, VII and VIII Must Be Dismissed in Their Entirety and Count X Must Be Dismissed In Part Because KPCA's Assertions of Injury With Respect to the Location of the CBTC Are Merely Generalized Grievances.**

Counts II, VII, VIII and X of the Amended Complaint challenge the District's decision to locate the CBTC on the Spingarn campus as illegal under the Equal Protection Clause of the U.S. Constitution, the Department of Transportation Act of 1966, the Federal Aid Highway Act, the District of Columbia Historic Landmark and Historic District Protection Act of 1978 (the "Landmark Act"), and the D.C. Human Rights Act.  As KPCA has not alleged that locating the CBTC on Spingarn will result in a concrete injury to it or any of its members, these claims must be dismissed.

As an initial matter, KPCA has not identified a single one of its members who will be injured as a result of the placement of the CBTC on the Spingarn campus.   The declarations of Ms. Blacknell and Ms. Hardesty assert, in nearly identical paragraphs, that they "believe that the streetcar barn construction on the green space on the Spingarn High School grounds will deprive me" and other unidentified individuals of "recreational use (including walking, playing, meeting and outdoor festivals) and enjoyment."  Blacknell Decl. ¶ 7; Hardesty Decl. ¶ 7.  These vague assertions are insufficient, however, because they fail to identify an aesthetic or recreational interest that will be significantly and adversely impacted by the planned construction on the Spingarn campus.  *First*, the declarations of Ms. Blacknell and Ms. Hardesty do not demonstrate a "specific and concrete plan" for their future use and enjoyment of the Spingarn campus, as required to demonstrate standing.  *See Summers*, 555 U.S. at 496 ("Such some day intentions— without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of . . . injury.").  *Second*, neither of these declarations assert (much less explain why) that the placement of the CBTC on the Spingarn campus will adversely affect

13

the ability of Ms. Blacknell or Ms. Hardesty, or any other KPCA member, to engage in any of the "recreational" activities identified.  Indeed, the planned CBTC site consists of only a relatively small portion of the 27.25 acres that make up the Spingarn campus.[5]  Neither Ms. Blacknell nor Ms. Hardesty indicate that any of their recreational interests depend on the availability of the planned CBTC site, as opposed to other parts of the Spingarn campus or the Kingman Park neighborhood.  As a result, the declarations of Ms. Blacknell and Ms. Hardesty do not establish that either of these individuals will suffer any actual injury as a result of the decision to locate the CBTC on the Spingarn campus.  *See Friends of the Earth, Inc.*, 528 U.S. at 183 ("[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity.").

In addition, the Amended Complaint does not demonstrate that the placement of the CBTC on Spingarn will cause an injury to KPCA as an organization.  To demonstrate its standing to sue on its own behalf, KPCA must allege an organizational injury that "perceptibly impair[s]" its ability to carry out its activities.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  "The organization must allege that discrete programmatic concerns are being directly and adversely affected" by the challenged action.  *Nat'l Taxpayers Union,* 68 F.3d at 1433.  Conversely, an organizational plaintiff does not have standing if the alleged violation merely "set[s] back [the] organization's abstract social interests or frustrate its objectives." *Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 133 (D.D.C. 2009); *see also Nat'l Taxpayers*

---

[5] *Compare* KPCA's Application for Historic Landmark or Historic District Designation, at 4 (noting that the Spingarn campus is 27.25 acres), available at http://dc.gov/DC/Planning/Planning%20Publication%20Files/OP/HP/Pending%20Landmarks/Spingarn%20nomination.pdf, *with* CBTC Concept Design, available at http://www.dc.gov/DC/DDOT/Publication%20Files/On%20Your%20Street/Mass%20Transit/DC%20Streetcar/CFA_CarBarnSubmission_2013-0212.pdf.

*Union,* 68 F.3d at 1433 (demonstration of organizational injury requires "more than allegations of damage to an interest in 'seeing' the law obeyed or a social goal furthered"); *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 39-40 (1976) (An organization interested in issues relating to access to medical care "could not establish . . . standing simply on the basis of that goal."); *Cmty. Nutrition Inst. v. Block,* 698 F.2d 1239, 1253-54 (D.C. Cir.1983) (A consumer organization could not establish standing "on the basis of its abstract interest in seeing that consumers" receive dairy products at the lowest possible price.), *rev'd on other grounds,* 467 U.S. 340 (1984).

KPCA contends that the planned CBTC will "affect the historic site lines, design, concept and character of Spingarn High School and the adjacent schools, as well as the historic Langston Dwellings and Langston Golf Course" (*id.* ¶¶ 87, 90). Even if this were true, such an impact would be "shared in substantially equal measure" by all or a large class of individuals in the District of Columbia, and would therefore constitute merely a generalized grievance insufficient to support standing. *Warth,* 422 U.S. at 499.

Indeed, the Amended Complaint does not contain any allegations explaining how locating the CBTC on the Spingarn campus would "perceptibly impair" KPCA's ability to carry out its activities. *Havens Realty Corp.,* 455 U.S. at 379. The Amended Complaint does not allege that KPCA holds any license or ownership interest in the planned CBTC site that would provide it with a basis to complain about decisions affecting that property. *See New York Envtl. Justice Alliance v. Giuliani,* 50 F. Supp. 2d 250, 254 (S.D.N.Y 1999) (holding that plaintiffs lacked standing to challenge city decisions concerning community gardens because they failed to allege any property interest in the gardens at issue), *aff'd by, Worley v. Giuliani,* No. 00-9126, 2001 WL 533649 (2d Cir. May 17, 2001).

Although the Amended Complaint alleges that KPCA successfully petitioned the District's Historic Preservation Review Board ("HPRB") to designate Spingarn as a historic landmark (Am. Compl. ¶¶ 29, 32), it does not identify any on-going activities with respect to that application or the Spingarn campus that would be "directly and adversely affected" by the planned CBTC. *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1433. Further, to the extent that KPCA contends that the HPRB's decision to approve the placement of the CBTC on Spingarn was contrary to the requirements of the Landmark Act, its interest in this lawsuit is nothing more than a generalized interest in "seeing the law obeyed," which is insufficient to establish its standing. *Id.*

Accordingly, the Court must dismiss, pursuant to Rule 12(b)(1), Counts II, VII and VIII of the Amended Complaint in their entirety and Count X to the extent it challenges the decision to locate the CBTC on the Spingarn campus.[6]

## II.   THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF AND MUST BE DISMISSED; ALTERNATIVELY, THE DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIMS

In addition to the deficiencies in Plaintiff's standing, as discussed above, the Amended Complaint does not allege a plausible claim for relief for any of the Plaintiff's ten causes of action. Accordingly, regardless of KPCA's standing, the Amended Complaint must be dismissed pursuant to Rule 12(b)(6), or, alternatively, Rule 56.

---

[6] Alternatively, Count II of the Amended Complaint must be dismissed because the types of aesthetic and environmental harms alleged by KPCA do not fall within the "zone of interest" protected by the Equal Protection Clause. *See Alexander v. First Wind Energy, LLC*, No. 2:11–cv–00364–GZS, 2012 WL 681838, at *5 (D. Me Feb. 28, 2012) (noting that "zone of interest" protected by Equal Protection Clause does not include "individual right to prevent others from engaging in development that might spoil [] scenic beauty"); *Gillam v. Barton*, No. 05-35232, 2006 WL 2497785, at *1 (9th Cir. Aug. 29, 2006) (holding that the "environmental injuries . . . lie outside of the zone of interest" of the Equal Protection Clause).

A. **Count I of the Amended Complaint Must Be Dismissed to the Extent It Asserts that the District Legislation Authorizing the Installation of Overhead Wires Violates Federal Law.**

KPCA asserts that the Transportation Infrastructure Emergency Amendment Act of 2010 (D.C. Code § 9-1171, the "2010 Act"), the legislation enacted by the D.C. Council authorizing the construction of overhead streetcar wires in the District, violates "an 1888 federal provision," which prohibits the Mayor of the District of Columbia from permitting or authorizing "any additional telegraph, telephone, electric lighting or other wires to be erected or maintained on or over any of the streets or avenues of the City of Washington."  Am. Compl. ¶ 37; D.C. Code § 34-1901.01.  KPCA's claim is meritless as a matter of law and must be dismissed.

Article I, section 8 of the United States Constitution vests Congress with exclusive legislative authority over the District of Columbia.  U.S. Const. art. I, s. 8, cl. 17.  In 1973, Congress passed the Home Rule Act, *inter alia*, to "grant to the inhabitants of the District of Columbia powers of local self-government" and "relieve Congress of the burden of legislating upon essentially local District matters."  D.C. Code § 1-201(a).  Subject to its retention of the ultimate legislative authority, Congress delegated certain legislative powers to the District of Columbia government, which "extend to all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of [the Act][.]"  *Id.* § 1-203.02 (2013).  This legislative power was "vested in and shall be exercised by the [D.C.] Council."  *Id.* § 1-204.04 (2013).

Section 206.02 of the D.C. Code provides that the Council shall not "[e]nact any act, or enact any act to amend or repeal any Act of Congress, which concerns the functions or property of the United States or *which is not restricted in its application exclusively in or to the District*."  *Id.* § 206.02(a)(3) (emphasis added).  Moreover, the Council must provide the Speaker of the

House of Representatives and the President of the Senate with a copy of any act passed by the Council and signed by the Mayor.  The act becomes effective thirty days after it is transmitted to Congress "unless during such 30-day period, there has been enacted into law a joint resolution disapproving such act." *Id.* § 206.02(c)(1).

In interpreting the Home Rule Act, the D.C. Court of Appeals has found that the Council "may repeal a congressionally-enacted statute limited in application to the District of Columbia, [but] the Council may not repeal a federal statute of broader application." *McConnell v. United States*, 537 A.2d 211, 215 (D.C. 1988).  Further, the D.C. Court of Appeals has interpreted the Home Rule Act to vest the Council with legislative authority over local matters that had been administered by federal officials prior to the Home Rule Act.  *See Dist. of Columbia v. The Greater Washington Cent. Labor Council, AFL-CIO*, 442 A.2d 110, 116 (D.C. 1982); *see also Techworld Dev. Corp. v. D.C. Pres. League*, 648 F. Supp. 106, 111, 115 (D.D.C. 1986) (holding that the Council had the authority "to close streets and transfer title to streets in the District, even where title is vested in the United States," and noting that "[a]uthority over the streets of the city is a paradigmatic municipal function; the sort of function one should expect a municipality to have").

KPCA does not allege that the authorization of overhead wires for local streetcar service is not within the "rightful subjects of legislation within the District."  D.C. Code § 1-203.02.  Rather, Plaintiff's claim is that the 2010 Act is impermissible merely because it conflicts with a ban on overhead wires in the District that was previously enacted by Congress.  The Congressionally-enacted statute at issue, however, was applicable only to the District of Columbia.  *See* D.C. Code § 34-1901.01 (prohibiting the Mayor from erecting or maintaining overhead wires "on or over any of the streets or avenues of the *City of Washington*") (emphasis

added).  Thus, as this Court has previously recognized, the Home Rule Act does not limit the

Council's ability to repeal that law.  *See* Mem. Op., at 14. *See also McConnell*, 537 A.2d at 215.

Accordingly, Plaintiff has failed to state a plausible claim that the 2010 Act violates federal law,

and therefore this claim in Count I of the Amended Complaint must be dismissed.

### B.     Counts I and II Must Be Dismissed Because KPCA Has Not Alleged A Plausible Claim for Relief Under the Equal Protection Clause of the Fifth Amendment.

In Counts I and II of the Amended Complaint, KPCA alleges that the District has violated

its equal protection rights by (1) authorizing the construction of overhead wires for the H Street

& Benning Road Line, and (2) selecting the Spingarn campus as the site of the CBTC.  Am.

Compl. ¶¶ 39-48, 59-60.  The equal protection principles embodied in the Due Process Clause of

the Fifth Amendment[7] direct that similarly situated persons be treated alike.  *Kelley v. Dist. of

Columbia*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012).  A plaintiff may allege two types of equal

protection violations:  (1) that plaintiff was subject to differential treatment *because of*

membership in a protected class, such as one based on race; or (2) that the plaintiff was

"arbitrarily and intentionally treated differently from others who are similarly situated—and the

government has no rational basis for the disparity." *Kelley*, 893 F. Supp. 2d at 122 (citing

*Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000)).  KPCA appears to assert the second type of

equal protection claim in Counts I and II of the Amended Complaint.[8]  *See* Mem. Op., at 15; Am.

Compl. ¶ 40 ("Defendant unconstitutionally enacted a streetcar overhead wires law, which

---

[7] The Fourteenth Amendment applies only to states.  *Bolling v. Sharpe*, 347 U.S. 497, 499, (1954).  The Fifth Amendment applies to the District of Columbia, and is an independent source of equal protection rights. *Id.*

[8] Even if the Amended Complaint could be construed to assert the first type of equal protection claim, these claims would still fail because Plaintiff has not set forth any factual allegations suggesting that either the authorization of overhead wires along the H Street corridor or the selection of Spingarn as the location of the CBTC was motivated by racial discriminatory reasons.

19

limited the construction of overhead streetcar wires to northeast Washington, D.C. and no other area of the city" ); *id.* ¶ 52 ("Defendant violated the equal protection clause of the U.S. Constitution when [it] limited the streetcar barn and maintenance industrial facility to the historic Spingarn High School site").

The Constitution "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted). "[T]he [d]issimilar treatment of dissimilarly situated persons does not violate equal protection. The threshold inquiry in evaluating an equal protection claim is, therefore, to determine whether a person is similarly situated to those persons who allegedly received favorable treatment." *Women Prisoners of D.C. Dep't of Corrections v. Dist. of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (citations omitted).  As the Amended Complaint does not set forth factual allegations demonstrating that the Kingman Park neighborhood has been treated differently than a similarly situated neighborhood, Counts I and II fail to state plausible claim for violation of equal protection and must be dismissed.

1.      KPCA Cannot Show That the 2010 Act Treats A Similarly Situated
        Neighborhood Differently from Kingman Park Without a Rational Basis.

KPCA contends that the statute authorizing construction of overhead streetcar wires in the District violates Plaintiff's equal protection rights because the law allegedly "limited the construction of overhead streetcar wires to northeast Washington, D.C. and no other area of the city, thereby violating the rights of lower and middle income residents,[9]  and African-American residents of the Kingman Park community."  Am. Compl. ¶ 40.  Plaintiff's characterizations of the law at issue are grossly inaccurate, and its claim is entirely without merit.

---

[9] Despite Plaintiff's allegations, such economic classifications are not  protected categories for purposes of a claim under the Equal Protection Clause.

As discussed in the District's Opposition to KPCA's motion for TRO and preliminary injunction, rather than being limited to a few specific neighborhoods, the planned DC Streetcar System is a 37-mile network, comprised of eight separate lines, which, when completed, will serve all eight Wards of the District.[10]  This planned streetcar network will stretch, for example, from Georgetown to Anacostia and from Woodley Park to Congress Heights.[11]  The 2.2-mile H Street & Benning Road Line is merely the first leg of this larger project.  The D.C. Council— after receiving public comment and testimony—approved the specific plan for the H Street & Benning Road Line in 2010.[12]

The D.C. Council has authorized the Mayor "to install aerial wires . . . for the sole purpose of powering or supporting wires that power streetcar transit where aerial wire power is necessary or, in the Mayor's determination, is more feasible than other currently available forms of propulsion."  D.C. Code § 9-1171(a).  Under the terms of the law, this authorization is initially limited to the H Street & Benning Road Line—*i.e.*, the first approved leg of the DC Streetcar System—until the Council has the opportunity to approve the specific plans for subsequent streetcar lines.  *Id.* §§ 9-1171(b); 9-1173.  Further, the law also prohibits the construction of aerial streetcar wires "[a]long the National Mall" and "[a]long Pennsylvania Avenue between the Capitol and the White House."  D.C. Code § 9-1172.

---

[10] *See generally* http://www.dcstreetcar.com/projects/37-mile-streetcar-system/ (last visited August 20, 2013); *see also* SMF ¶ 1.

[11] *Id.*

[12] *See* R18-680, "Streetcar Project Comprehensive Plan Approval Resolution of 2010," available at http://dcclims1.dccouncil.us/images/00001/20101223125824.pdf; *see also* Comm. Report on PR18-1164, "Streetcar Project Comprehensive Plan Approval Resolution of 2010 (Dec. 3, 2010), available at http://dcclims1.dccouncil.us/images/00001/20101230105542.pdf (last visited July 24, 2013).

As an initial matter, the above-referenced law, on its face, does not set forth any express criteria or classifications based on membership in a protected category, such as race. *Compare with Adrand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).  Rather, the law makes a rational distinction between those streetcar projects that have been specifically approved by the Council (*i.e.*, the H Street & Benning Road Line) and those that have not (*i.e.*, the other seven planned lines of the DC Streetcar System).[13]  Indeed, the legislative record indicates that the Council extensively reviewed and approved the plans for the H Street & Benning Road Line before enacting the 2010 Act.[14]  Moreover, the law provides that the Mayor will have to comply with the requirements of section 9-1173 before installing overhead wires along *any* additional streetcar lines, including those that will run through predominantly African-American communities.

In light of the above, the other neighborhoods through which DC Streetcar lines will pass are not similarly situated to Kingman Park.  *See* Mem. Op., at 17.  As a result, KPCA cannot demonstrate that the 2010 Act treats another similarly situated neighborhood differently from Kingman Park without a rational basis.  Accordingly, KPCA cannot state a plausible claim that the 2010 Act violates equal protection, and this claim in Count I of the Amended Complaint must be dismissed as a matter of law.

---

[13] The establishment of "wire-free zones" along the National Mall and portions of Pennsylvania Avenue, on its face, does not set forth any racial classifications.  While KPCA clearly would have preferred that the Council have established a "wire-free zone" in Kingman Park, its disagreement with this policy choice does not give rise to a constitutional violation.

[14] *See* Comm. on Public Works & Transp., Comm. Report (Dec. 3, 2010), available at http://dcclims1.dccouncil.us/images/00001/20101230105542.pdf.

> 2.   KPCA Has Not Set Forth Factual Allegations Suggesting that DDOT's Selection of Spingarn for the CBTC Site Was Without a Rational Basis.

Similarly, although KPCA claims that the District violated the equal protection clause of the U.S Constitution by selecting Spingarn as the location of the CBTC even though it "had several alternative streetcar barn construction sites" (Am. Compl. ¶ 53), Plaintiff does identify these alternative sites in the Amended Complaint, much less allege facts demonstrating that any of them are similarly situated to the Spingarn campus.  On this basis alone, KPCA has failed to allege a plausible claim that the selection of Spingarn violated the equal protection clause of the U.S Constitution.

Aside from KPCA's pleading deficiencies, the public record in this matter demonstrates that the other sites that DDOT considered for the location of the CBTC are *not* similarly situated to the Spingarn campus.  *See* "CBTC Site Selection" Handout, available at http://www.dcstreetcar.com/wp-content/uploads/2013/03/CBTCsiteselection.pdf; *see also* SMF ¶¶ 3-5.  Moreover, even if any sites were similarly situated, the public record offers a rational basis for DDOT's decision to select Spingarn as the location of the CBTC.  *Id.*; *see* Mem. Op., at 19.  The Amended Complaint, therefore, does not set forth a plausible claim that the selection of Spingarn as the location of the CBTC violated the equal protection clause of the U.S. Constitution.  Accordingly, this claim in Count II of the Amended Complaint must be dismissed, or, in the alternative, the District is entitled to judgment as a matter of law.

> **C.   Count III of the Amended Complaint Must Be Dismissed Because KPCA Has Not Plausibly Alleged that Section 106 of the NHPA Applies to the H Street and Benning Road Line.**

Count III of the Amended Complaint seeks to enjoin the construction of planned overhead streetcar wires on the grounds that the District has failed to comply with the requirement of Section 106 of the National Historic Preservation Act, 16 U.S.C. § 470f

("NHPA").  As explained above, this claim must be dismissed pursuant to Rule 12(b)(1) because

KPCA has failed to demonstrate that it has standing to challenge the construction of the planned

overhead streetcar wires.

In addition, Count III does not state a plausible claim for relief because KPCA has not set

forth sufficient factual allegations to demonstrate that Section 106 of the NHPA even applies to

the H Street & Benning Road line.   The NHPA "imposes obligations only on federal agencies, a

term expressly defined to exclude Congress and the District of Columbia.  NHPA imposes no

obligations on state governments and includes the District of Columbia in its definition of

'state.'" *Lee v. Thornburgh*, 877 F.2d 1053, 1056 (D.C. Cir. 1989).  Moreover, the NHPA

"imposes obligations only when a project is undertaken either by a federal agency or through the

auspices of agency funding or approval." *Id.* Accordingly, unless the H Street line or

construction on the Spingarn campus is "either federally funded or federally licensed, § 106

simply does not apply to [the] project." *Sheridan Kalorama Historical Ass'n v. Christopher*, 49

F.3d 750, 756 (D.C. Cir. 1995).

As this Court has recognized, KPCA does not allege that the construction of overhead

wires along H Street and Benning Road is federally funded or licensed.  *See* Mem. Op., at 22.

Rather, KPCA alleges only that "[t]he District streetcar construction project has received federal

funding and aid for and during the planning, *track and street construction*."  Am. Compl. ¶ 87

(emphasis added).  The public record demonstrates that the H Street & Benning Road Line is

funded entirely with local dollars and without federal funding.[15]   In light of the above, KPCA

has not stated a plausible claim that the District has violated the NHPA in connection with its

---

[15] *See* Memorandum of Agreement between DDOT and SHPO, at 1 (May 2013), available at
http://www.dcstreetcar.com/wp-content/uploads/2013/01/Executed-H-Street-Benning-Road-
Streetcar-MOA.pdf.  *See also* SMF ¶ 2 ("The H Street & Benning Road Street Car Project . . . is
entirely funded with local dollars, and no federal action or permits are needed for this project.").

planned construction of overhead streetcar wires along H Street and Benning Road.

Accordingly, this claim must be dismissed as a matter of law, or, in the alternative, the District is

entitled to judgment as a matter of law.

> **D.      Count IV of the Amended Complaint Must be Dismissed Because the District of Columbia Comprehensive Plan Does Not Provide A Private Right of Action in Federal Court.**

Count IV of the Amended Complaint alleges that "[t]he proposed maintenance garage,

electrical substation, and overhead wires construction violates the District's Comprehensive

Plan[.]"  Am. Compl. ¶ 70.  Plaintiff's allegations, however, do not state a cognizable claim for

relief because the District Elements of the Comprehensive Plan, on which Plaintiff relies, are not

enforceable in federal court.  Indeed, the District Elements of the Comprehensive Plan "***are not***

***binding policy directives***."  *Tenley and Cleveland Park Emergency Comm. v. Dist. of Columbia*

*Bd. of Zoning Adjustment*, 550 A.2d 331, 336 (D.C. 1988) (emphasis added).  Rather, the

Comprehensive Plan merely sets forth "a broad framework intended to guide the future land use

planning decisions for the District. . . .  In short, the Comprehensive Plan is not self-executing."

*Id.* at 337.  Further, the District of Columbia Court of Appeals has held that the "Zoning

Commission is the *exclusive forum* for addressing issues of inconsistency under the

Comprehensive Plan."  *Id.* at 332 (emphasis added).  Accordingly, as KPCA has no basis to

enforce the Comprehensive Plan against the District in this Court, Count IV of the Amended

Complaint must be dismissed as a matter of law.

> **E.      Count V of the Amended Complaint Must Be Dismissed Because this Court Lacks Jurisdiction Over KPCA's Claim for Violation of the District's Zoning Law.**

Count V of the Amended Complaint contends that "[t]he placement of an industrial

facility . . . on the Spingarn school campus violates District of Columbia Zoning law."  Am.

Compl. ¶ 78.  Plaintiff's allegations, however, are not sufficient to assert a plausible claim for

relief.  Pursuant to D.C. Code § 6-641.07(g), the Board of Zoning Adjustment is authorized to

hear and decide appeals by a person or organization aggrieved by a decision that was based, in

whole or in part, upon a zoning regulation.  *See also* D.C. Code § 6-641.07(f); *Tenley*, 550 A.2d

at 332 (plaintiff failed to exhaust his administrative remedies by not presenting its case to the

Zoning Commission).  Thereafter, the D.C. Court of Appeals has *exclusive* jurisdiction to review

such decisions in a contested case.  D.C. Code § 2-510; *see also Dist. of Columbia, Dep't of

Public Works v. L.G. Indus.*, 758 A.2d 950, 954 (D.C. 2000) (emphasis added).  As a result,

because exclusive jurisdiction over a D.C. Zoning law claim rests with the D.C. Court of

Appeals, this Court does not have jurisdiction over Plaintiff's claim.  *See Lightfoot v. Dist. of

Columbia*, 448 F.3d 392, 399 (D.C. Cir. 2006) (cautioning against the exercise of supplemental

jurisdiction over claims involving administrative decision for which the D.C. Court of Appeals

has exclusive jurisdiction); *English v. Dist. of Columbia*, 815 F. Supp. 2d 254, 269 (D.D.C.

2011) ("Although the *Lightfoot* court nevertheless remanded to the district court to "reconsider"

its exercise of supplemental jurisdiction, it strongly suggested that the district court should

decline to do so.").  *See also* Mem. Op., at 24-25.  Therefore, Plaintiff's D.C. Zoning law claim

must be dismissed as a matter of law.

> **F.    Count VI of the Amended Complaint Must be Dismissed Because KPCA
>         Does Not Set Forth Factual Allegations Demonstrating that DDOT Was
>         Required to Complete An EIS for the CBTC.**

Plaintiff asserts that the "proposed construction of a maintenance garage and storage

facility" violates the District of Columbia Environmental Policy Act of 1989 ("DCEPA")

because the District "refused to conduct and prepare an environmental impact study and

statement." Am. Compl. ¶ 84. This claim fails, however, because the Amended Complaint does not adequately allege that the DCEPA required the preparation of an EIS for this project.

The DCEPA requires the preparation of an EIS only where a proposed project constitutes "a major action that is likely to have substantial negative impact on the environment." D.C. Code § 8-109.03(a). A "major action" is defined as "any action that costs over $1,000,000"—as measured in 1989 dollars—"and that may have a significant impact on the environment" and is not subject to one of the several exemptions identified in the statute. *Id.* § 8-109.02(b). The Amended Complaint does not contain allegations demonstrating that the "proposed construction of a maintenance garage and storage facility" meets the definition of "major action" under the statute. For example, KPCA does not allege that the cost of this project exceeds $1,000,000 or that it is not subject to a statutory exemption to the EIS requirement. KPCA does not even assert that the planned construction will have a "significant impact on the environment," but rather only states—without support—that the District has admitted the proposal "would have a major adverse impact on the *community*." Am. Compl. ¶ 84 (emphasis added). As KPCA has not adequately alleged a violation of the DCEPA, Count VI must be dismissed pursuant to Rule 12(b)(6).

Further, the undisputed evidence indicates that the District was not required to prepare an EIS in this instance. To determine if a project meets the threshold to trigger the preparation of an EIS, an applicant generally must file a document known as an Environmental Impact Screening Form ("EISF") with the DCRA. 10 DCMR § 616.2; 20 DCMR § 7204.2; *see also* D.C. Code 9-109.03(c) (describing the process for determining whether an EIS is required). Here, in order to receive permit approval for the planned construction of the CBTC on the Spingarn campus, DDOT submitted a detailed EISF to DCRA, which included numerous studies and reports

analyzing the potential impacts of the planned construction at the site.[16]  Based on its review of

the EISF, DCRA determined that the proposed action "is not likely to have substantial negative

impact on the environment, and submission of an Environmental Impact Statement (EIS) is not

required."  SMF ¶ 8.  KPCA has not asserted any claim that DCRA's finding was arbitrary,

capricious, an abuse of discretion, or otherwise contrary to law.  Even if it had, the Amended

Complaint does not identify any basis upon which the Court could make such a determination.[17]

Accordingly, the Court should dismiss Count VI for failure to state a plausible claim for

relief, or, in the alternative, the District is entitled to judgment as a matter of law.

G.    **Count VII of the Amended Complaint Must Be Dismissed Because the Federal Aid Highway Act Does Provide for a Private Right of Action Against the District.**

In Count VII of its Amended Complaint, Plaintiff asserts that the District violated Section

4(f) of the Department of Transportation ("DOT") Act of 1966, 49 U.S.C. § 303,[18] and Section

138 of the Federal Aid Highway Act, 23 U.S.C. § 138.  Neither of these statutes, however,

provide for a private cause of action against the District.  Rather, both statutes set forth certain

conditions under which the *U.S. Secretary of Transportation* may approve the use of federal

funds for certain types of transportation projects.  *See* 49 U.S.C. § 303; 23 U.S.C. § 138

(emphasis added).  KPCA has not set forth any allegations articulating what obligations the

---

[16] *See generally* http://www.dcstreetcar.com/about/resources/studiesreports/ (last visited Aug. 20, 2013).  *See also* SMF ¶¶ 6-7.

[17] Such a conclusion would be difficult as federal courts have determined that agency's decision not to prepare an EIS should be "afforded considerable deference."  *Mich. Gambling Opposition v. Norton*, 477 F. Supp. 2d 1, 9 (D.D.C. 2007) (reviewing federal agency decision under the National Environmental Policy Act).

[18] Plaintiff cites this statute as 49 U.S.C. § 1653(f), but it appears to be in error.  *See* Am Compl. ¶ 87.

Secretary would have with respect to the H Street & Benning Road streetcar project.[19]  *See* Mem. Op., at 27.  In any case, neither of the above statutes impose any obligations on any state or local government like the District.  49 U.S.C. § 303; 23 U.S.C. § 138.  Additionally, KPCA does not identify any specific requirement set forth in either of these statutes that it contends has or will be violated by building the CBTC on the Spingarn campus.  *Iqbal*, 556 U.S. at 678 (a pleading that offers "naked assertions devoid of further factual enhancement" is insufficient to state a claim for relief) (internal quotations and citation omitted); *see also Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (a court need not accept an inference unsupported by the facts set forth in the complaint).  Accordingly, Plaintiff has failed to state a cause of action under either of these statutes and Count VII must be dismissed pursuant to Rule 12(b)(6).

### H.   Count VIII of the Amended Complaint Must be Dismissed Because The Landmark Act Does Not Provide A Private Right of Action in Federal Court.

Count VIII of the Amended Complaint asserts that the CBTC and electrical substation on Spingarn violates the D.C. Historic Landmark and Historic District Protection Act ("the Landmark Act"), D.C. Code § 6-1101, *et seq*., because "[t]he D.C. Preservation Review Board's decision to permit the streetcar construction on the grounds of Spingarn was arbitrary, capricious, and an abuse of discretion."  Am. Compl. ¶ 92.  As a preliminary, yet fundamentally important matter, the Landmark Act does not appear to provide KPCA with a private right of action since it does not expressly contain a private enforcement mechanism.  Additionally, the Landmark Act was certainly not enacted for the special benefit of any particular class of individuals as the statute itself explicitly states it is intended for the "welfare of the people of the District of Columbia."  D.C. Code § 6-1101.

---

[19] Indeed, the factual record in this matter demonstrates that the H Street & Benning Road Line is not federally funded and no federal action or permits are needed for the project.  SMF ¶ 2.

Notwithstanding these issues, a written petition for review of a decision of the HPRB must be brought, if at all, in the D.C. Court of Appeals.  D.C. Code § 6-1112, 2-510; *see also Donnelly Assocs. v. Dist. of Columbia Historic Preservation Review Bd.*, 520 A.2d 270, 276 (D.C. 1987); *Embassy Real Estate Holdings, LLC v. D.C. Mayor's Agent for Historic Preservation*, 944 A.2d 1036, 1044 (D.C. 2008).  Moreover, as discussed above, the D.C. Circuit discourages federal courts from exercising supplemental jurisdiction to review administrative decisions for which the D.C. Court of Appeals has exclusive jurisdiction. *See Lightfoot*, 448 F.3d at 399; Mem. Op., at 28.

Furthermore, as this Court has recognized, KPCA has neither identified which HPRB decisions were in error, nor articulated the basis upon which the Court could conclude that such decision was arbitrary or capricious.  *See* Mem. Op., at 28. *see also Iqbal*, 556 U.S. at 678.  As a result, Count VIII of Plaintiff's Amended Complaint fails to state a plausible claim for relief under the Landmark Act and must be dismissed.

**I.      Count IX of the Amended Complaint Must be Dismissed Because KCPA Has Not Alleged A Plausible Claim that the District Failed to Comply with the Requirements of D.C. Code § 1-309.10.**

In Count IX of the Amended Complaint, Plaintiff contends that the District failed to give notice and "great weight" to the views of Advisory Neighborhood Commission ("ANC") 5B regarding the proposed CBTC construction on the Spingarn High School campus.  Am. Compl. ¶¶ 18-20, 93-95.[20]  Plaintiff's allegations, however, do not show how the District failed to meet either one of these requirements.

---

[20] While Plaintiff's allegations are far from clear, it appears that the thrust of KPCA's claim is that the District failed to give "great weight" to the views of ANC 5B.  *See* Am. Compl. ¶ 95. Indeed, the allegations set forth under Count IX of the Amended Complaint do not include an allegation that the District failed to give notice to ANC 5B concerning the selection of Spingarn as the site of the CBTC.  To the extent Plaintiff also bases its claim on the allegation that the

District law provides that ANCs may comment on a vast array of actions proposed by the District government, and that the District must give "great weight" to any written recommendations provided by the ANC during deliberations by governmental entities. *See* D.C. Code §§ 1-309.10(a), (d)(3)(A). *See Quincy Park Condo. Unit Owners' Ass'n v. Dist. of Columbia Bd. of Zoning*, 4 A.3d 1283, 1287 n.6 (D.C. 2010). In order to allow ANC Commissioners to weigh in on a specific proposal, the law requires that, at least 30 days before proposed actions, "written notice . . . shall be given by first-class mail to . . . the Commissioner representing a single-member district affected by said actions." D.C. Code § 1-309.10(b). While the statute requires written notice by first-class mail, actual notice cures a technical violation of the requirement, as long as the ANC has enough time to comment. *See Comm. for Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177, 1183 (D.C. 1982) ("[A]ctual notice to the affected ANC which allows meaningful participation in a proceeding is sufficient to cure merely technical violations of the thirty-day notice requirement of the ANC Act."); *see also Kopff v. Dist. of Columbia Alcoholic Beverage Control Bd.*, 381 A.2d 1372, 1382 (D.C. 1977) (error in failure to give statutory notice to ANC was cured by giving actual notice); *Shiflett v. Dist. of Columbia Bd. of Appeals and Review*, 431 A.2d 9, 11 (D.C. 1981) (failure to notify an ANC regarding an application for building permit was harmless error where ANC received actual notice).

      1.        KPCA Cannot State A Claim Under the ANC Notice Requirement Because It Admits that ANC 5B Received *Actual* Notice of the Challenged Actions.

KPCA cannot state a claim for violation of the notice requirements of D.C. Code § 1-309.10(b) because its own allegations state that 5B ANC Commissioner Bernice Blacknell was informed of the "proposed construction of a streetcar maintenance barn, electrical substation, and

---

District failed to give notice to the appropriate ANC (Am. Compl. ¶¶ 18-20), the District addresses that argument as well.

overhead wires on the grounds of Spingarn" in March 2012—sixteen months before the commencement of this lawsuit.  Am. Compl. ¶ 21.  Therefore, even if Plaintiff has adequately alleged a technical violation of the notice requirement of D.C. Code § 1-309.10(b),[21] any such violation would be cured by the *actual* notice that the ANC Commissioner admittedly received. *See Comm. for Washington's Riverfront Parks*, 451 A.2d at 1183.  Accordingly, to the extent that the Amended Complaint sets forth a claim that the District failed to provide ANC 5B with notice as required by D.C. Code § 1-309.10(b), such claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

> **2.** **KPCA Otherwise Has Failed to State a Claim Under D.C. Code § 1-309.10 Because It Has Not Identified the Written Recommendations that the District Allegedly Failed to Accord "Great Weight."**

KPCA's apparent claim that the District failed to accord "great weight" to "[t]he ANC Commission's opposition to the streetcar car barn construction" (Am. Compl. ¶ 95), is similarly deficient because the Amended Complaint does not identify the written recommendations allegedly at issue.  District law provides that each Commission notified of a proposed District action under section 1-309(b) "shall consider each such action or actions in a meeting with notice given in accordance with § 1-309.11(c) which is open to the public in accordance with §1-309.11(g).  The recommendations of the Commission, if any, *shall be in writing* and articulate the basis for its decision." *Id.* § 1-309.10(d)(1) (emphasis added).  "The issues and concerns raised in the recommendations of the Commission shall be given great weight during the deliberations by the government entity."  *Id.* § 1-309.10(d)(3)(A).

---

[21] The District, however, in no way concedes that ANC 5B did not receive written notice regarding the proposed construction as required by D.C. Code § 1-309.10(b).  Such inquiry is irrelevant where, as here, the appropriate ANC Commissioner received actual notice of the project.

It is well-established that the District "is not obliged to follow the ANC's recommendations or adopt its views," *Neighbors Against Foxhall Gridlock v. Dist. of Columbia Bd. of Zoning*, 792 A.2d 246, 249 (D.C. 2002) (citations omitted), or even accord the ANC "special deference," *see Kopff*, 381 A.2d at 1384 (noting that an ANC does not enjoy "'expert' status, entitled to special deference as such"). Rather, "[g]reat weight requires acknowledgement of the Commission as the source of the recommendations and explicit reference to each of the Commission's issues and concerns." D.C. Code § 1-309.10(d)(3)(A).

KPCA alleges that ANC 5B "voted to oppose the District's proposed streetcar car barn construction on the grounds of Spingarn High School." Am. Compl. ¶ 95. KPCA further contends that the "5B ANC Commission's official opposition was issued by letter dated October 31, 2013, and attached as Exhibit 5 to the Complaint. *Id.* ¶¶ 24, 95. This letter—which is addressed to the HPRB and signed by three ANC 5B commissioners—references only a resolution in support of KPCA's "application for Historic Designation of Spingarn High School, dated September 21, 2012." Doc. No. 1 [Compl.], Ex. 5 at 1.[22] Plaintiff's own allegations, however, indicate that consistent with the ANC's apparent position, the HPRB approved KPCA's application to designate Spingarn as a historic landmark on November 29, 2012. Am. Compl. ¶ 32. Plaintiff has not identified any other written recommendation that ANC 5B has submitted with respect to the DC Streetcar project to which the District failed to give "great weight." *See* Mem. Op., at 30. Indeed, even though Plaintiff, to date, has submitted two separate declarations from Commissioner Bernice Blacknell in this matter, neither declaration attaches any resolution from ANC 5B. As KPCA has not identified the specific written

---

[22] KPCA did not attach any exhibits to its Amended Complaint. The District, therefore, assumes Plaintiff is referring to the letter attached as Exhibit 5 to the initial Complaint.

recommendations that it contends were not provided "great weight" by the District, it has not alleged a plausible claim for relief under D.C. Code § 1-309.10.[23]

J.   **Count X of the Amended Complaint Must be Dismissed Because KPCA Has Not Stated a Plausible Claim that the Planned Construction at the Spingarn Campus Violates the D.C. Human Rights Act.**

Plaintiff has also failed to state a plausible cause of action under the D.C. Human Rights Act ("DCHRA").  Plaintiff contends that the District violated the DCHRA because construction of the CBTC and electrical substation on the grounds of Spingarn High School "unlawfully discriminates against lower and middle income, and predominately African-American residents of the Kingman Park, Capitol Hill East, River Terrace and Rosedale communities."[24]  Am. Compl. ¶ 97.  In addition, Plaintiff alleges that the DC Streetcar project, particularly D.C. Code § 9-1171 will have a discriminatory effect on the predominately African-American neighborhood of Kingman Park.  Am. Compl. at ¶¶ 101-105.  Although Plaintiff does not identify the specific provision on which its claims are based,[25] it appears that such claims are cognizable, if at all, within D.C. Code § 2-1402.73 which states:

> Except as otherwise provided for by District law or when otherwise lawfully and reasonably permitted, it shall be unlawful discriminatory practice for a District government agency or office

---

[23] Moreover, the factual record in this matter indicates, that DDOT—the agency responsible for implementing the DC Streetcar project—does not have a record of receiving any resolution from ANC 5B opposing construction on the Spingarn campus.  SMF ¶ 9.

[24] Given that there are issues with Plaintiff's own standing, as discussed above, Plaintiff certainly does not have standing to bring claims on behalf of Capitol Hill East, River Terrace and Rosedale communities.  *See Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25 (D.C. Cir. 2002) ("An association *only* has standing to bring suit on behalf of its members when its members would otherwise have standing to use in their own right") (emphasis added).  Although Plaintiff has not provided an adequate description of its members, Plaintiff has at least alleged that its members are "residents of Kingman Park," (Am. Compl. at ¶ 6), not residents of these other communities.

[25] For this reason alone, KPCA has failed to state a plausible claim for violation of the DCHRA.  *See Iqbal*, 556 U.S. at 678.

> to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, disability, matriculation, political affiliation, source of income, or place of residence or business.

Plaintiff appears to allege that the District discriminated against its members by planning to perform excavation work and construction on the Spingarn campus and not "any other predominately non-African-American [H]igh School campus in the District of Columbia" and that "[p]redominately non-African-American communities are not affected by the construction of overhead streetcar wires." Am. Compl. ¶¶ 98, 101. First, with respect to the streetcar wires, Plaintiff's allegation is simply incorrect. Plaintiff has not and cannot show that predominately non-African-American communities will not be affected. Indeed, as discussed above, the DC Streetcar project will eventually be comprised of a 37-mile network serving all eight wards, and will likely require overhead wires from Woodley Park to Congress Heights and from Georgetown to Anacostia.

Second, Section 2-1402.73 cannot be violated simply by the District choosing to build a CBTC in an area that is predominately African American while not choosing to build a similar facility in a different part of the city. Under this reasoning, and given that the District as a whole is predominately African American, virtually any decision by the District to build a facility of any kind in one quadrant, ward, or neighborhood could be challenged as discriminatory under the DCHRA. *See Boykin v. Gray*, 895 F. Supp. 2d 199, 218 (D.D.C. 2012) ("This broad interpretation, which would subject an unimaginable number of routine policy decisions to litigation, cannot credibly be derived from a provision that bars discrimination 'on the basis of' place of residence or eighteen other protected traits."). Plaintiff has not cited any legal authority

suggesting otherwise.  As a result, Plaintiff has not stated a viable claim of discrimination under the DCHRA.[26]

Additionally, Plaintiff's claim is legally insufficient and must be dismissed because the language of Section 2-1402.73 demonstrates a focus on the selective denial of benefits to certain persons, based on their race and/or place of residence, while the same benefits remain available to other individuals.  D.C. Code § 2-1402.73; *see also Boykin*, 895 F. Supp. 2d at 218.  Here, Plaintiff alleges that constructing the CBTC on Spingarn's campus would "alter the view" of the historic property.  However, this purported harm would not amount to a denial of benefits solely to Kingman Park residents.  Assuming *arguendo* that constructing the CBTC on the grounds of Spingarn High School would indeed alter the view of the historic property—all District residents would be denied the benefit of an unaltered, unobstructed view of the historic site.  Thus, the conduct challenged by Plaintiff is simply not protected by the statute.  Accordingly, Plaintiff has failed to state a plausible claim under the DCHRA, and Count X must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint must be dismissed, or in the alternative, summary judgment should be granted to the District.

---

[26] Even if the mere selection of Spingarn for the CBTC were sufficient to support a claim, however, the District has demonstrated that such selection is "independently justified for some nondiscriminatory reason."  *See Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ.*, 536 A.2d 1, 29 (D.C. 1987) (en banc).  Indeed, Spingarn was chosen as the preferred site for the CBTC because it has certain beneficial characteristics that were not present in other sites that were considered.  SMF ¶ 3.  As a result, the District would be entitled to judgment as a matter of law.

Dated:  August 30, 2013                Respectfully submitted,

IRVIN B. NATHAN
Attorney General
for the District of Columbia

ELLEN EFROS
Deputy Attorney General
Public Interest Division

 /s/ Grace Graham
GRACE GRAHAM, [472878]
Chief, Equity Section
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 442-9784
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

 /s/  Chad A. Naso
CHAD A. NASO [1001694]
Assistant Attorney General
Office of the Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 724-7854 (o)
(202) 741-8951 (f)
chad.naso@dc.gov

 /s/ Alicia Cullen
ALICIA M. CULLEN [1015227]
Assistant Attorney General
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-5868 (o)
(202) 715-7721
alicia.cullen@dc.gov

*Counsel for Defendant*
*Vincent C. Gray,*
*Mayor of the District of Columbia*

37