# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KINGMAN PARK CIVIC ASSOCIATION,

    Plaintiff,

    v.

VINCENT C. GRAY,

    Defendant.

**Civil Action No. 13-990 (CKK)**

## MEMORANDUM OPINION
(May 14, 2014)

Plaintiff Kingman Park Civic Association ("Kingman Park") filed suit against Vincent C. Gray in his official capacity as the Mayor of the District of Columbia, challenging aspects of the District's plan to construct a streetcar line in the northeast quadrant of the District. Presently before the Court is Defendant's [29] Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment and Plaintiff's [33] Motion to Stay and for Reconsideration of the Court's Order Denying Plaintiff's Motion for Leave to File a Second Amended Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that Plaintiff has standing to challenge the streetcar-related construction on the campus of Spingarn Senior High School, but not the installation of overhead streetcar wires in the Kingman Park neighborhood. However, all counts, except Counts II and VI, of Plaintiff's

---

[1] Defendant's Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment ("Def.'s Mot."), ECF No. [29]; Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment ("Pl.'s Opp'n."), ECF No. [30]; Defendant's Reply to Plaintiff's Opposition ("Def.'s Reply"), ECF No. [32]; Plaintiff's Motion to Stay Defendant's Motion to Dismiss and Plaintiff's Motion for Reconsideration of Plaintiff's Motion for Leave to File Second Amended Complaint ("Pl.'s Mot."), ECF No. [33]; Defendant's Opposition to Plaintiff's Motion to Stay ("Def.'s Opp'n."), ECF No. [35]; Plaintiff's Reply to Defendant's Opposition ("Pl.'s Reply"), ECF No. [36].

Complaint must be dismissed because Plaintiff has failed to state a claim for relief or a claim

over which this Court has jurisdiction regarding the construction on the Spingarn campus.  The

Court holds Counts II and VI in abeyance pending Defendant's production of certain documents

related to the environmental impact of construction on Spingarn Senior High School.  The Court

also finds that Plaintiff cannot be granted leave to amend its Amended Complaint to include a

Clean Air Act claim because it failed to meet the Clean Air Act's strict pre-suit notice

requirements.  Accordingly, Defendant's [29] Motion to Dismiss or, in the alternative, for

Summary Judgment is GRANTED IN PART and HELD IN ABEYANCE IN PART and

Plaintiff's [33] Motion to Stay and for Reconsideration of the Court's Order Denying Plaintiff's

Motion for Leave to File a Second Amended Complaint is DENIED.

## I. BACKGROUND

### A.    *Factual Background*

For the purposes of Defendant's Motion to Dismiss, the Court presumes the following

facts pled in Plaintiff's Amended Complaint to be true, as required when considering a motion to

dismiss.[2]  *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  The

District of Columbia intends to construct a streetcar network extending across 37 miles.  Am.

---

[2] Although Defendant filed its motion as a Motion to Dismiss or, in the alternative, a
Motion for Summary Judgment, the Court shall treat Defendant's motion exclusively as a
Motion to Dismiss.  In deciding a motion brought under Rule 12(b)(6),

> a court does not consider matters outside the pleadings, but a court may consider
> on a motion to dismiss the facts alleged in the complaint, documents attached as
> exhibits or incorporated by reference in the complaint, or documents upon which
> the plaintiff's complaint necessarily relies even if the document is produced not
> by the plaintiff in the complaint but by the defendant in a motion to dismiss.

*Ward v. D.C. Dep't of Youth Rehab. Serv's.,* 768 F.Supp.2d 117, 119 (internal quotations and
citations omitted).

Compl. ¶ 10.  On or about March 31, 2011, the D.C. Council passed and approved the "Transportation Infrastructure Amendment Act of 2010," D.C. Code § 9-1171, permitting "Aerial Wires for Streetcars" for the streetcar transit line running along H Street and Benning Road in the northeast quadrant of the District.  *Id.*  ¶ 17.  Around December 2011, the District of Columbia Department of Transportation ("DDOT") decided to build a "car barn" on the grounds of Spingarn Senior High School ("Spingarn campus"), located on the 2500 block of Benning Road, Northeast.  *Id*. ¶¶ 13, 18.  The car barn will be used to house streetcars while not in operation and will also serve as an operations and maintenance facility.  *Id.* ¶ 14.  An electrical substation was also proposed to be constructed on the Spingarn campus.[3]  *Id.* ¶ 20.  Plaintiff and Advisory Neighborhood Commission ("ANC") 5B Commissioner Bernice Blacknell, whose ANC district includes Spingarn Senior High School, were not notified of DDOT's decision to construct on the Spingarn campus in December 2011.  *Id*. ¶ 18.  ANC Commissioner Blacknell was first informed of the proposed construction on the grounds of Spingarn campus in March 2012 at an ANC meeting.  *Id*. ¶ 21.  Shortly thereafter, ANC 5B Commissioner Blacknell objected to proposed construction plans and requested the District not construct on the grounds of Spingarn High School.  *Id.* ¶ 22.  ANC Commissioner Blacknell also submitted a citizens petition to the District in opposition to the proposed construction on Spingarn campus.  *Id.*

In September 2012, Plaintiff filed an application with the District for the historic landmark designation of Spingarn Senior High School.  *Id.* ¶ 29.  In October 2012, ANC 5B

---

[3]  Throughout Plaintiff's Amended Complaint, Plaintiff variously references the construction of a car barn, maintenance garage, storage facility, and electrical substation—at times referencing all of these facilities and at other times only referencing the car barn.  As Plaintiff opposes the construction of all of these facilities because they involve construction on the Spingarn campus, the Court is referencing all of these facilities when it uses the phrase "the construction on Spingarn campus" or "the car barn."

issued a resolution sent to the D.C. Historic Preservation Board ("Preservation Review Board") indicating the Commission's support of Plaintiff's application for historic designation of Spingarn High School and informing the Preservation Review Board of citizen opposition to construction of a car barn on the grounds of the Spingarn campus. *Id.* ¶ 24 (citing Compl., Pl.'s Ex. 5). In November 2012, the Preservation Review Board accepted Spingarn Senior High School as the site for the new car barn. *Id.* ¶ 31. Later that same month, the Preservation Review Board designated Spingarn High School as an historic landmark in the District of Columbia Inventory of Historic Sites. *Id.* ¶ 32. On April 4, 2013, the Preservation Review Board unanimously approved the concept for the streetcar car barn and training center on the Spingarn campus. *Id.* ¶ 33. On May 2, 2013, the Preservation Review Board gave final approval to the concept and plans for the construction of a car barn and training center on the Spingarn campus. *Id.* ¶ 36.

> B.     *Procedural History*

Plaintiff Kingman Park Civic Association—an unincorporated neighborhood civic association whose members are residents of the Kingman Park neighborhood in Northeast Washington, D.C.—filed suit on June 28, 2013, against District of Columbia Mayor Vincent Gray in his official capacity challenging the District's plan to construct the streetcar line in the northeast quadrant of the District. Specifically, Plaintiff challenges the construction of the overhead street car wires on H Street and Benning Road and the car barn on the Spingarn campus as violating the Fifth Amendment's Equal Protection Clause, the National Historic Preservation Act, the District of Columbia's Comprehensive Plan, District of Columbia Zoning laws, the District of Columbia Environmental Policy Act of 1989, the Federal-Aid Highway Program, the U.S. Department of Transportation Act of 1966, the District of Columbia Historic

Landmark and Historic District Protection Act of 1978, D.C. Code § 1-309.10(a)'s "great weight" requirement, and the District of Columbia Human Rights Act. The same day Plaintiff filed suit, Plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction. *See* ECF No. [2]. Plaintiff filed an Amended Motion for Temporary Restraining Order on July 5, 2013, *see* ECF No. [5], and an Amended Complaint on July 9, 2013, *see* ECF No. [7]. On July 29, 2013, the Court denied Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction on the basis that Plaintiff was not likely to succeed on the merits of its claims, nor suffer irreparable injury absent emergency relief, and because the balance of the equities did not favor injunctive relief. *See* July 29, 2013, Order & Mem. Op., ECF Nos. [16] & [17].

On August 2, 2013, Plaintiff filed a Motion for Leave to File a Second Amended Complaint seeking to include a Clean Air Act ("CAA") claim and a Fair Housing Act claim. *See* ECF No. [19]. Before the Court ruled on Plaintiff's motion to amend, Plaintiff withdrew its CAA claim, acknowledging that it failed to satisfy the CAA's pre-suit notice requirements. *See* ECF No. [24], at 1. On August 26, 2013, the Court denied Plaintiff leave to amend its Complaint to include a Fair Housing Act claim. *See* Aug. 26, 2013, Order & Mem. Op., ECF Nos. [26] & [27]. Four days later, Defendant filed the present Motion to Dismiss or, in the alternative, for Summary Judgment. *See* ECF No. [29]. Defendant moves the Court to dismiss all ten counts of Plaintiff's Amended Complaint for lack of standing or, alternatively, failure to state a claim. Following the completion of briefing of Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, Plaintiff filed a motion moving the Court to reconsider its denial of Plaintiff's Motion for Leave to File Second Amended Complaint and to stay Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment pending the Court's decision on

Plaintiff's Motion for Reconsideration. *See* ECF No. [33]. Although Plaintiff claims to be moving the Court to reconsider its prior decision, Plaintiff only seeks leave to amend its Amended Complaint to include the CAA claim which the Court never denied, but Plaintiff voluntarily withdrew. Accordingly, Plaintiff's "Motion for Reconsideration" is in actuality no more than an additional motion for leave to file a second amended complaint. As the parties have fully briefed Plaintiff's "Motion for Reconsideration," the Court will now consider the propriety of permitting Plaintiff leave to amend its Amended Complaint to include a CAA claim. Since the Court denies Plaintiff leave to amend its Amended Complaint to include a CAA claim, the Court need not stay its consideration of Defendant's Motion to Dismiss to permit Defendant time to respond to Plaintiff's additional claim. Accordingly, the Court shall also consider Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment.

## II. LEGAL STANDARD

### A. Leave to Amend Complaint

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a matter of course within a prescribed time period. *See* Fed. R. Civ. P. 15(a)(1). Where, as here, a party seeks to amend its pleadings outside that time period, it may do so only with the opposing party's written consent or the district court's leave. *See* Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend a complaint is entrusted to the sound discretion of the district court, but leave "should be freely given unless there is a good reason, such as futility, to the contrary." *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996), *cert. denied,* 520 U.S. 1197 (1997). As the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962). "[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,* 366 F.3d 930, 945 (D.C. Cir. 2004), *cert. denied,* 545 U.S. 1104 (2005). Review for futility is practically "identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank Funding Corp. Secs. Litig.,* 629 F.3d 213, 215–16 (D.C. Cir. 2010) (quotation marks omitted). Because leave to amend should be liberally granted, the party opposing amendment bears the burden of coming forward with a colorable basis for denying leave to amend. *Abdullah v. Washington,* 530 F.Supp.2d 112, 115 (D.D.C. 2008).

## B. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint

when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F.Supp.2d 163, 170 (D.D.C. 2007) (citations omitted).

### C. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

### A. Leave to Amend Complaint

Plaintiff seeks to file a Second Amended Complaint that includes one count under the Clean Air Act ("CAA"). Defendant opposes Plaintiff amending its Complaint to add the CAA claim because Plaintiff "has not complied with the relevant pre-suit notice requirements and has not stated a plausible claim for relief under the CAA." Def.'s Opp'n. at 1-2.

The CAA explicitly provides that "[n]o action may be commenced" under the citizen suit provision of the statute unless the plaintiff, at least 60 days prior to commencing the suit, provides "notice of the violation (i) to the Administrator [of the U.S. Environmental Protection Agency], (ii)

to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." *See* 42 U.S.C. § 7604(b)(1)(A). Such notice must include:

> sufficient information to permit the recipient to identify the *specific standard*, *limitation*, or *order* which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name and address of the person giving the notice.

40 C.F.R. § 54.3(b) (emphasis added). Courts treat these notice requirements as "'mandatory conditions precedent to commencing suit' [that] may not be avoided by employing a 'flexible or pragmatic' construction." *Monogahela Power Co v. Reilly*, 980 F.2d 272, 275 n.2 (4th Cir. 1993) (citing *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989)). As proof of its compliance with the statutory notice requirements, Plaintiff attaches to its Motion the "notice" letters it sent to the U.S. Environmental Protection Agency ("EPA") and the District of Columbia government on September 6, 2013. *See* Pl.'s Mot. Ex. A, ECF No. [33-2]. Although the letters were sent more than sixty days prior to Plaintiff seeking leave to amend its Amended Complaint to include a CAA claim, the letters do not contain sufficient information to comply with the pre-suit notice requirements. The only information relevant to a CAA claim included in the notice letter is: "Without known or visible permits, and upon information and belief, the removal of trees and dirt has released such known substances as lead, arsenic, mercury and chromium into the air."[4] *Id.* at 5, 10. Plaintiff does not, however, identify the "*specific* standard, limitation, or order" that has been violated by the release of these materials. *See Nat'l Parks & Conservation Ass'n, Inc.*, *v. Tenn. Valley Auth.*, 502 F.3d 1316, 1330 (11th Cir. 2007), *cert. denied,* 554 U.S. 917 (2008) (finding notice letter did not identify the "specific standard" allegedly violated when the letter broadly alleged that the operation of a power

---

[4] Plaintiff also claims that it complied with pre-suit notice requirements by complaining in the letter about the "installation of cantilevers for the overhead streetcar wires that will emit known radiation." Pl.'s Reply at 2. It is unclear whether radiation would be an emission covered by the CAA. However, even if radiation is covered by the CAA, Plaintiff's letter still fails to address the *specific standard, limitation,* or *order* that has been violated by this emission.

plant violated "all of the requirements of Subpart Da" of the CAA regulations which sets emission standards for several pollutants); *cf. Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 175 F.Supp.2d 1071, 1076–77 (E.D. Tenn. 2001) (explaining that the CAA's notice requirements are "strict" and finding that although pre-suit notice letter stated defendant had violated the 20% opacity limit, the letter did not give proper notice because it failed to specify the dates of the alleged violations or the sites at which the violations occurred). Simply alleging that excavation work has released certain materials into the air, without identifying whether this release violates a certain emissions standard, limitation, or order, is insufficient to meet the CAA's strict notice requirements.

In Plaintiff's Opposition, Plaintiff notes that the CAA defines "emission standard or limitation" in part as "any condition or requirement of a *permit*" or "any other standard, limitation, or schedule established under any *permit.*" 42 U.S.C. § 7604(f) (emphasis added by Plaintiff). Plaintiff appears to argue that since Plaintiff alleged in its letters to the EPA and the District of Columbia that the District conducted the excavation work *without* all of the proper *permits*, Plaintiff thus identified the "standard, limitation, or order" that the District violated by releasing certain materials into the air when excavating the Spingarn campus site. However, Plaintiff does not specify in the letter what kind of permits the District should have had nor claim that the District violated the emissions standards or conditions set forth in those permits or any other emission regulations. Alleging that the District failed to obtain unspecified permits for the excavation of the Spingarn campus in no way provides the EPA or the District of Columbia notice of the standard, limitation, or order that was violated by the release of the identified materials into the air.

Accordingly, as Plaintiff has failed to comply with the pre-suit notice requirements of the CAA, the Court does not have jurisdiction over Plaintiff's proposed CAA claim. Plaintiff's "Motion for Reconsideration" is thus DENIED. Since Defendant need not amend its Motion to Dismiss to

address Plaintiff's CAA claim, Plaintiff's Motion to Stay Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment is also DENIED.

### B. Motion to Dismiss: Standing

As a threshold matter, Defendant argues that Plaintiff lacks standing to challenge the installation of the overhead wires or construction at the Spingarn campus. The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury-in-fact," that is, "'an invasion of a legally protected interest' that is (i) 'concrete and particularized' rather than abstract or generalized, and (ii) 'actual or imminent' rather than remote, speculative, conjectural or hypothetical." *In re Navy Chaplaincy*, 534 F.3d 756, 759-60 (D.C. Cir. 2008) (quoting *Lujan*, 504 U.S. at 560). Second, the asserted injury must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (citation omitted). Third, the plaintiff must demonstrate redressability: "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (citation omitted). It is axiomatic that the "party invoking federal jurisdiction bears the burden of establishing the[ ] elements" of constitutional standing. *Id.*

An association like Kingman Park may establish standing to sue in two ways. First, Kingman Park may sue on its own behalf if it "meet[s] the general standing requirements applied to individuals." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995). Second, Kingman Park may sue on behalf of its members if it demonstrates "associational standing." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). Associational standing requires the organization to show that

(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.

*Id.* Plaintiff argues that it has standing to sue Defendant both on its own behalf and on behalf of its members.

1. Organizational Standing

To establish organizational standing, Kingman Park "must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *Nat'l Taxpayers Union*, 68 F.3d at 1433. The Amended Complaint describes Plaintiff Kingman Park as "an unincorporated neighborhood civic association" which "seeks to preserve and protect the historic buildings, scenic views, integrity and environment within the District of Columbia and specifically, the Kingman Park neighborhood." Am. Compl. ¶ 6. In September 2012, Plaintiff filed an application with the Preservation Review Board seeking to designate Spingarn as an historic landmark. *Id.* ¶ 29. On November 1, 2012, the Preservation Review Board accepted the Spingarn campus as the site for the new streetcar car barn proposed by the DDOT. *Id.* ¶ 31. Thereafter, on November 29, 2012, the Preservation Review Board unanimously designated the property as an historic landmark in November 2012. *Id.* ¶ 32. The Preservation Review Board gave final approval to the concept and plans for the car barn on May 2, 2013. *Id.* ¶ 36. Defendant is now in the process of building a car barn, maintenance facility, and electrical substation on the grounds of an historic landmark Plaintiff specifically sought to protect, an injury that is directly traceable to the conduct of the Defendant, and would be redressable by an order from this Court barring construction on the site of Spingarn Senior High School. "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on

the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Accordingly, Kingman Park has met its burden of establishing it has organizational standing to challenge construction on the Spingarn campus.

However, the Court agrees with Defendant that Kingman Park's allegations with respect to the overhead wires are likely insufficient to establish organizational standing. The allegations in the Amended Complaint relate only to Kingman Park's opposition to the construction at Spingarn. Moreover, the Plaintiff's Opposition fails to offer any explanation as to how the overhead wires would concretely affect any of the organization's programmatic concerns. Accordingly, Kingman Park has failed to meet its burden of establishing organizational standing to challenge the installation of overhead wires on H Street and Benning Road.

2. Associational Standing

As Plaintiff has established organizational standing to challenge the construction on Spingarn campus, the Court need not consider whether Plaintiff also has associational standing to challenge the Spingarn construction. Consequently, the Court will only consider whether Plaintiff has associational standing to challenge the installation of overheard wires on H Street and Benning Road.

In support of its earlier Motion for a Temporary Restraining Order, Plaintiff submitted declarations from James R. Wiggins, Charlie L. Murray, Jr., Joan Johnson, Allen Green, Dr. Jean Marie Miller, and Veronica E. Raglin. *See generally* Pl.'s Reply in support of Mot. for TRO, Ex. 1, ECF No. [9-1]. Curiously, only Joan Johnson, Allen Green, and Dr. Miller indicated that they are members of the Kingman Park Civic Association. In support of its Opposition to Defendant's Motion to Dismiss, Plaintiff submitted amended declarations from James R.

13

Wiggins and Charlie L. Murray, which now indicate that they are members of the Kingman Park Civic Association. *See generally* Pl.'s Opp'n., Ex. 5. Therefore, the Court shall look to Ms. Johnson's, Mr. Green's, Dr. Miller's, Mr. Wiggin's, and Mr. Murray's declarations to determine if Plaintiff has demonstrated that it has associational standing to challenge the Defendant's streetcar project.

With respect to the installation of overhead wires, the declarations submitted each contain an identical paragraph alleging that the wires "will adversely affect the clear and unobstructed views of (1) the nationally historic Langston Dwellings; (2) the historic Spingarn High School and its grounds; (3) the nationally historic Langston Golf Course; and (4) the Anacostia River." Johnson Decl. ¶ 2; Green Decl. ¶ 2; Miller Decl. ¶ 2; Wiggins Decl. ¶ 2; Murray Decl. ¶ 2. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (internal quotation marks omitted). Neither Ms. Johnson, Mr. Green, nor Dr. Miller alleges that he or she derives any aesthetic or recreational value from the four areas listed. Nor do these declarants assert that any value they might derive would be adversely affected by the overhead wires.

Mr. Wiggins and Mr. Murray, however, each aver in their declarations: "We use the Spingarn green space for recreational activities, including walking, playing ball games, and meeting with neighbors. The creation of an electromagnetic field on the green space and on Benning Road will create health problems for the residents and visitors to the neighborhood." Wiggins Decl. ¶ 7; Murray Decl. ¶ 6. Contrary to Defendant's contention, the Court finds that Mr. Wiggins and Mr. Murray have sufficiently alleged personal—not just generalized—injury to

14

their recreational use of the Spingarn campus due to the overhead wires. Both declarants assert that they personally derive recreational value out of the Spingarn campus and provide several specific examples of their recreational use of the campus. Both declarants then aver that residents of the neighborhood—which each declarant states that he is—will suffer health problems as a result of the electromagnetic field on the Spingarn campus.

Nevertheless, Plaintiff fails to establish associational standing to challenge the installation of the overhead wires because it has not alleged a "certainly impending" threatened future injury. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Plaintiff's Amended Complaint and Mr. Wiggins and Mr. Murray's declarations only allege that the overhead wires "*will* adversely affect the health of the residents (by exposure to electromagnetic radiation fields)." Am. Compl. ¶ 64; Wiggins Decl. ¶7; Murray Decl. ¶ 6. "Allegations of possible future injury do not satisfy the requirements of Art[icle] III. A threatened injury must be certainly impending to constitute injury in fact." *Public Citizen, Inc. v. Natl' Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The D.C. Circuit has noted that "[e]nvironmental and health injuries often are purely probabilistic," accordingly, plaintiffs must "demonstrate a 'substantial probability' that they will be injured." *Natural Res. Def. Council v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006). Plaintiff attempts to bolster the certainty of the health risk from the overhead wires by discussing a study of electromagnetic radiation by Dr. A.M. Muc in its Opposition. Pl.'s Opp'n. at 15-16. However, the portion of Dr. Muc's study to which Plaintiff cites, if anything, underlines the speculative nature of any injury Plaintiff's members would suffer from the overhead wires. Specifically, Dr. Muc's study notes that "[*s*]*ome* epidemiological studies have *suggested an increased risk* of leukemia in children living near power lines that cause ELF electric and magnetic fields;" "[t]he World Health

Organization (WHO) concluded that large epidemiological studies are also needed to *investigate possible associations* between 50/60 Hz fields and breast cancer or neurodegenerative diseases;" and "[o]ther epidemiological studies and hundreds of biological studies acknowledge that low level electromagnetic fields *may increase the risk* of cancer."[5]  Pl.'s Opp'n. at 16 (citing Pl.'s Reply in support of Mot. for TRO, Pl.'s Ex. 4, ECF No. [9-2]).  Ultimately, Dr. Muc concludes that "the possibility of significant detrimental effects from the low frequency EMFs [electromagnetic fields] associated with transportation systems *can only be considered to be rather speculative and remote* at the present time."  Pl.'s Reply in support of Mot. for TRO, Pl.'s Ex. 4, ECF No. [9-2], at 8 (emphasis added).  Such conclusions do not demonstrate that there is a "substantial probability" that Plaintiff's members will be injured.  *See Mountain States Legal Foundation v. Glickman,* 92 F.3d 1228, 1234-35 (D.C. Cir. 1996) (relevant variations in risk must be "non-trivial," and "sufficient . . . to take a suit out of the category of the hypothetical."); *Carik v. United States Dep't of Health and Human Services*, --- F.Supp.2d --- , 2013 WL 6189313, *6-*7 (D.D.C. Nov. 27, 2013) (holding that injury-in-fact to plaintiffs who "merely allege[d] that there is a possibility that adverse effects may result from taking a diluted dose of [a medicine]" was too speculative even though plaintiffs provided a report indicating that lower doses of medicine had been associated with "a steady increase in the number of reported adverse events" in patients taking the medication); *In re Fruit Juice Products Marketing and Sales Practices Litigation*, 831 F.Supp.2d 507, 510-11 (D.Mass. 2011) (allegations that "lead in Defendants' products posed a health risk and that, by consuming these products, they placed themselves [] at risk of future harm from lead poisoning" were too hypothetical to establish

---

[5] There is also no indication that the modes of transportation analyzed in Dr. Muc's report are in any way analogous to the system to be installed on the H Street line.

standing because "[p]laintiffs [] made no allegations as to the amount of lead actually in Defendants' products, [did] not claim[] that any particular amount in the products is dangerous, and [did] not allege[] that any specific amount has caused actual injuries to any plaintiff").

Accordingly, the Court finds that Plaintiff has neither organizational nor associational standing to bring claims relating to the overhead street car wires. Therefore, the Court dismisses Counts I and III of Plaintiff's Amended Complaint and Counts IV and X to the extent that they relate to the overhead wires. As the Court has found Plaintiff has established organizational standing to challenge the construction on the Spingarn campus, the Court shall now evaluate whether Plaintiff has stated a claim in Counts II and V-IX, and Counts IV and X to the extent that they relate to the Spingarn campus construction.

### C. Motion to Dismiss: Failure to State a Claim

1. Equal Protection (Count II)

In Count II of Plaintiff's Amended Complaint, Plaintiff brings an Equal Protection Clause claim pursuant to 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). Count II alleges, in relevant part, that the District's decision to construct the car barn on the Spingarn campus violated Plaintiff's right to equal protection as set forth in the Fifth and Fourteenth Amendments. Am. Compl. ¶¶ 37-60. The Fourteenth Amendment does not apply to the District of Columbia, but the Equal Protection Clause of the Fourteenth Amendment applies to the District of Columbia through the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Dixon v. District of Columbia*, 666 F.3d 1337, 1339 (D.C. Cir. 2011).

"The Equal Protection Clause provides a basis for challenging legislative classifications that treat one group of persons as inferior or superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way." *Jones v. Helms*, 452 U.S. 412, 423-424 (1981). In other words, plaintiffs may allege two types of equal protection violations: (1) that the plaintiff was subject to differential treatment *because of* membership in a protected class, such as one based on race; or (2) that the plaintiff was "arbitrarily and intentionally treated differently from others who are similarly situated—and the government has no rational basis for the disparity." *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564-565 (2000)). The Plaintiff's Amended Complaint frames the Plaintiff's equal protection claim as the second type of claim. *See*, *e.g.*, Am. Compl. ¶ 52 ("Defendant violated the equal protection clause of the U.S. Constitution when the District limited the streetcar barn and maintenance industrial facility to the historic Spingarn High School site in northeast Washington, D.C., and to no other area of the city or historic site."). The Plaintiff alleges a disparate impact on African-American and low-income residents in Kingman Park, but "[i]n order to prove that a facially neutral statute, such as the one involved here, violates equal protection guarantees, a challenger must demonstrate a racially discriminatory purpose behind the statute. Disparate racial impact can be probative of such purpose, but it is not dispositive without more." *United States v. Holton*, 116 F.3d 1536, 1548 (D.C. Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)).

Plaintiff has failed to sufficiently allege facts to allow the Court to conclude, assuming the alleged facts are true, that the District had a racially discriminatory purpose in selecting the Spingarn campus for the car barn. Plaintiff alleges that Defendant denied the Plaintiff equal protection by "performing excavation work on the grounds of an historic African American

site—Spingarn Senior High School, although there are other alternative sites." Am. Compl. ¶¶ 52-53. The Constitution "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted). "[T]he [d]issimilar treatment of dissimilarly situated persons does not violate equal protection. The threshold inquiry in evaluating an equal protection claim is, therefore, to determine whether a person is similarly situated to those persons who allegedly received favorable treatment." *Women Prisoners of D.C. Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (citations omitted). Plaintiff fails to identify any neighborhood, much less one that is a similarly situated non-African-American neighborhood—that has been treated more favorably than Kingman Park. Simply alleging that Defendant selected the Spingarn campus in an African-American community while other unidentified alternative sites were available is insufficient to demonstrate a racially discriminatory purpose behind Defendant's actions and, therefore, insufficient to "plausibly give rise to an entitlement to relief" under the Equal Protection Clause. *Iqbal,* 556 U.S. at 679. *See Ekwem v. Fenty*, 666 F.Supp.2d 71, 78-79 (D.D.C. 2009) (holding that the court could not reasonably infer that defendants were "motivated by discriminatory intent or purpose" where plaintiff's only factual support was the conclusory allegation that "[o]lder supervisors and caseworkers, particularly those of a different national origin," were "general[ly]" assigned "inordinate" numbers of cases and threatened with disciplinary action" but presented no evidence of the caseloads, national origins, or ages of other supervisors or caseworkers to support his claim); *Atherton v. Dist. of Columbia Office of the Mayor,* 567 F.3d 672, 688 (D.C. Cir. 2009) (affirming dismissal of equal protection claims where plaintiff's "spare facts and allegations" did "'not permit the court to infer more than the mere

possibility of misconduct.'" (quoting *Iqbal,* 556 U.S. at 679)). Accordingly, the Court finds that Plaintiff fails to state an equal protection claim under a disparate impact theory.[6]

In its Opposition, Plaintiff seems to frame its Amended Complaint as also alleging that the decision to construct the car barn on the Spingarn campus was based on the fact that the Kingman Park community is predominantly African-American—i.e. the first type of equal protection claim. *See* Pl.'s Opp'n. at 27-31. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1977). As part of this inquiry, the Court considers, among other things, (1) whether the impact of the official action "bears more heavily on one race than another"; (2) "[t]he historical background of the decision"; (3) "[t]he specific sequence of events leading up to the challenged decision," including whether the defendant departed from the "normal procedural sequence"; (4) "[s]ubstantive departures" from factors normally considered in reaching a decision; and (5) the administrative history of a decision. *Id*. at 266-268.

In summary terms, the Plaintiff alleges five factors that demonstrate the District's decision to construct the car barn on the Spingarn campus was motivated by the fact that Kingman Park is predominantly African-American:[7] (1) construction of the car barn on the

---

[6] The Court also notes that the District of Columbia's plans for the D.C. Streetcar System are not limited to the Kingman Park neighborhood or even the H Street and Benning Road area. The planned D.C. Streetcar System includes a 37-mile network, comprised of eight separate lines, which, when completed, will serve all eight Wards of the District. *See generally* http://www.dcstreetcar.com/projects/37-mile-streetcar-system/ (last visited May 12, 2014).

[7] In its Opposition, Plaintiff urges the Court to consider a list of *six* factors as evidence of Defendant's discriminatory motive in selecting the Spingarn campus for the car barn construction. Some of these factors are the same and some are different from the list above. It is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss. *See Perkins v. Vance–Cooks,* 886 F.Supp.2d 22, 29 n. 5 (D.D.C. 2012) ("It is

Spingarn campus violates the District of Columbia Comprehensive Plan, Am. Compl. ¶ 54; (2) the District failed to conduct an Environmental Impact Statement addressing the impact of the construction of a streetcar barn, *id.* ¶ 56; (3) the Preservation Review Board's decision to approve the construction of the car barn was arbitrary and capricious, *id.* ¶ 57; (4) the District failed to notify ANC 5B Commissioner Blacknell that it intended to construct the car barn on the Spingarn campus; *id.* ¶ 59; and (5) the District failed to give "great weight" to the opposition to the construction plan by the relevant ANC, *id.* ¶ 60.

As set forth below, Plaintiff does not succeed on its independent claims reflected in the first and fifth factors. As for the third factor—the Preservation Review Board's allegedly arbitrary and capricious decision to approve the construction on Spingarn campus—Plaintiff makes no more than the conclusory allegation that the Preservation Review Board acted arbitrarily and capriciously and abused its discretion. Plaintiff has not identified which decisions by the Preservation Review Board regarding construction on the Spingarn campus were in error. Nor does Plaintiff articulate any basis on which the Court could conclude that the Preservation Review Board's decision was arbitrary or capricious. Accordingly, Plaintiff's conclusory allegation does not lend weight to the conclusion that the District acted with a discriminatory purpose, much less any improper purpose or method at all. The fourth factor—the District's failure to notify ANC Commissioner Blacknell of the proposed construction in violation of D.C. Code § 1-309.10 ANC notice requirements—is sufficient to support the conclusion that

---

settled law in this circuit that a plaintiff may not raise new allegations in this manner."); *Middlebrooks v. Godwin Corp.,* 722 F.Supp.2d 82, 87 n. 4 (D.D.C. 2010); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.,* 297 F.Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks omitted). Accordingly, the Court will only consider the factors which Plaintiff specifically includes in Count II of its Amended Complaint.

Defendant departed from the "normal procedural sequence" in selecting the Spingarn campus for the car barn. However, this allegation, by itself, is insufficient to raise an inference of invidious discriminatory purpose. The only other potentially viable evidence that Defendant departed from the "normal procedural sequence" is Plaintiff's allegation that the District failed to conduct an Environmental Impact Statement—the fifth factor. For the reasons explained below, the Court holds in abeyance Defendant's Motion as to Plaintiff's Environmental Impact Statement claim. Accordingly, in order to properly and fully evaluate Plaintiff's equal protection claim, the Court shall also hold in abeyance Defendant's Motion as to Count II pending resolution of Plaintiff's Environmental Impact Statement claim.

2. District of Columbia Comprehensive Plan (Count IV)

Count IV of the Amended Complaint alleges that the construction on the Spingarn campus "violates the District's Comprehensive Plan." Am. Compl. ¶ 70. "Pursuant to the Home Rule Act, §§ 203(a), 423(a), the D.C. Council enacted the Comprehensive Plan on April 10, 1984." *Tenley & Cleveland Park Emergency Comm. v. D.C. Bd. of Zoning Adjustments*, 550 A.2d 331, 336 (D.C. 1988). "The Comprehensive Plan Act adopted most of the District Elements of the Comprehensive Plan including those for economic development, housing, environmental protection, transportation, public facilities, urban design, preservation and historic features, the downtown area and human services." *Id.* "[T]he Comprehensive Plan is a broad framework intended to guide the future land use planning decisions for the District. . . . In short, the Comprehensive Plan is not self-executing." *Id.* at 337. The Comprehensive Plan Act is clear that "[t]he District elements of the Plan . . . are not binding policy directives." *Id.* at 336. Moreover, the District of Columbia Court of Appeals held in *Tenley* that the "Zoning Commission is the exclusive forum for addressing issues of inconsistency under the

Comprehensive Plan." *Id.* at 332. Plaintiff does not acknowledge *Tenley* in its Opposition and fails to respond to Defendant's contention that the Comprehensive Plan does not create a cause of action, and that Plaintiff must seek relief for any purported violations of the Plan before the Zoning Commission.[8] Accordingly, the Court finds that Count IV fails to state a claim for relief and that there is no basis for enforcing the Comprehensive Plan against the District in this Court.

### 3. District of Columbia Zoning Law (Count V)

Plaintiff alleges in Count V of the Amended Complaint that the proposed construction on the Spingarn campus violates District of Columbia zoning laws, D.C. Code § 6-641.01 *et seq.* Am. Compl. ¶ 78. Specifically, Plaintiff alleges that the placement of an industrial facility—the car barn—on the Spingarn campus violates District of Columbia zoning laws because the Spingarn campus is zoned "residential" and the adjacent Benning Road area is zoned "commercial." *Id.* ¶¶ 78-79. Defendant argues, and Plaintiff does not dispute, that any zoning-based challenge to construction on the Spingarn campus must be brought in the first instance before the Board of Zoning Adjustment. D.C. Code §§ 6-641.07(f) & (g); *Dist. Of Columbia, Dep't of Public Works v. L.G. Indus.*, 758 A.2d 950, 955 (D.C. 2000) ("A review of the statutory provisions makes it clear that review of contested zoning determinations is vested in the [Board of Zoning Adjustment].") The District of Columbia Court of Appeals has exclusive jurisdiction over any appeal from a decision by the Board of Zoning Adjustment. *Id.* § 2-510(a); *L.G. Indus.*, 758 A.2d at 954. Even if this Court has jurisdiction over the Plaintiff's claim that the construction on the Spingarn campus violates D.C. zoning laws, the United States Court of Appeals for the

---

[8] Plaintiff only responds that "[t]he Court has jurisdiction pursuant to 42 U.S.C. § 1983" and that Plaintiff "has a direct and/or implied right of action because of the disparate impact on the Kingman Park neighborhood." Pl.'s Opp'n. at 34. The Court addresses Plaintiff's § 1983 arguments in Part III, Section C-9 of this Memorandum Opinion.

District of Columbia Circuit discourages courts in this District from exercising supplemental jurisdiction over claims challenging administrative decisions by the District of Columbia. *See Lightfoot v. District of Columbia*, 448 F.3d 392, 399 (D.C. Cir. 2006). Accordingly, the Court finds that Count V must be dismissed because this Court lacks jurisdiction over this claim.

   4.   District of Columbia Environmental Policy Act of 1989 (Count VI)

Count VI of the Amended Complaint alleges Defendant violated section 4 of the District of Columbia Environmental Policy Act ("D.C. EPA") of 1989, D.C. Code § 8-109.01 *et seq.*, by failing to conduct an Environmental Impact Statement ("EIS") regarding the anticipated construction on the Spingarn campus. Am. Compl. ¶ 84. The D.C. EPA provides that

> Whenever the Mayor or a board, commission, authority, or person proposes or approves a *major action* that is likely to have *substantial negative impact on the environment*, if implemented, the Mayor, board, commission, authority, or person shall prepare or cause to be prepared, and transmit, in accordance with subsection (b) of this section, a detailed EIS at least 60 days prior to implementation of the proposed major action, unless the Mayor determines that the proposed major action has been or is subject to the functional equivalent of an EIS.

D.C. Code § 8-109.03(a) (emphasis added). Plaintiff alleges that the preparation of an EIS is required because the District's Streetcar Report . . . concluded that DDOT initially "did not evaluate" "extensively" Spingarn High School as a location for the car barn "due to *traffic* and *community* impact," noting "[t]his alternative would involve the streetcar tracks crossing the westbound travel lanes from the median into the yard adjacent to Spingarn High School." Am. Compl. ¶ 84 (emphasis added). Plaintiff alleges that since "the District Government has admitted that the proposal would have a major adverse impact on the *community*," but "to [Plaintiff's] knowledge, an EIS has not been prepared or issued," Defendant has violated the D.C. EPA. *Id.* (emphasis added). However, the D.C. EPA only requires an EIS if the project is likely to have a substantial negative impact on the *environment*. The D.C. EPA defines

"environment" as "the physical conditions that will be affected by a proposed action, including but not limited to, the land, air, water, minerals, flora and fauna." D.C. Code § 8-109.02(3). Plaintiff's reliance on *community* impact is thus not sufficient to state a claim under the D.C. EPA.

Count VI of Plaintiff's Amended Complaint goes on to list three bullet points of alleged "[d]amage created by the [e]xcavation work on the Spingarn [s]ite." *Id.* The latter two bullet points discuss "storm water and sewage run-off" and "excavation and construction vibration" that will damage "over 500 homes." *Id.* As with Plaintiff's previous allegations about *community* impact, these allegations cannot trigger the need for an EIS as they focus on *homes* and not the *environment*. Plaintiff's first bullet point, however, discusses "the release of dust and other contaminants into the air" "that will affect the health of residents and visitors in the community." *Id.* This impact fits more clearly into the definition of "environment" set forth in the D.C. EPA.[9] It is unclear to the Court from Plaintiff's Amended Complaint, however, whether this allegation of environmental impact alone amounts to a "substantial negative impact." Plaintiff's Opposition provides little assistance to the Court as Plaintiff makes no more than the conclusory assertion that it "has clearly set forth factual allegations demonstrating that DDOT was required to complete an Environmental Impact Statement (EIS) for the [car barn]." Pl.'s Opp'n. at 35. Defendant's briefing also provides the Court little guidance since Defendant

---

[9] Defendant also argues that Plaintiff has failed to allege a D.C. EPA claim because Plaintiff has not alleged that the construction on Spingarn campus was a "major action,' which is defined as "any action that costs over $1,000,000"—as measured in 1989 dollars—"and that may have a significant impact on the environment" and is not subject to one of the several exemptions identified in the statute. D.C. Code § 8-109.02(b). However, Defendant fails to note that an action is also considered a "major action" regardless of cost if "the action imminently and substantially affects the public health, safety, or welfare." *Id.* Plaintiff has alleged that "the release of dust and other contaminants into the air" "will affect the health of residents and visitors in the community." Am. Compl. ¶ 84.

entirely ignores Plaintiff's three bullet points regarding damage from the excavation work. Instead, Defendant argues that "the undisputed evidence indicates that the District was not required to prepare an EIS in this instance" and points to the District of Columbia Department of Consumer and Regulatory Affairs' determination, based on its review of the Environmental Impact Screening Form, that the construction on Spingarn campus is "not likely to have substantial negative impact on the environment, and submission of an Environmental Impact Statement (EIS) is not required." Def.'s Mot. at 27-28. Defendant has not produced the Environmental Impact Screening Form on which the District relies in its determination, or any of the recommendations or reports related to the Environmental Impact Screening Form. In Plaintiff's Opposition, Plaintiff requests discovery from Defendant, specifically, "environmental research documents and files, and documents relevant to the construction of . . . the Spingarn streetcar maintenance facility excavation and construction." Pl.'s Opp'n. at 18, 19. The Court finds that this claim and Plaintiff's request for discovery would be most expediently resolved by Defendant producing the Environmental Impact Screening Form and the related agency recommendations and environmental reports. Accordingly, the Court holds in abeyance Defendant's Motion as to Count VI pending Defendant's production of the Environmental Impact Screening Form and the related agency recommendations and environmental reports. Upon production of these documents, the court will determine whether supplemental briefing is required on this discrete issue.

5. Federal-Aid Highway Program (Count VII)

Plaintiff alleges in Count VII of the Amended Complaint that the Defendant violated certain provisions of the Federal-Aid Highways Program, 23 U.S.C. § 138, and the U.S. Department of Transportation Act of 1966, 49 U.S.C. § 1653(f). Am. Compl. ¶ 87. However,

the statutory provisions cited by Plaintiff place certain obligations on the Secretary of Transportation, not state or local governments like the District of Columbia. *See* 49 U.S.C. § 303(c) ("[T]he Secretary may approve a transportation program or project . . . requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance . . ."); 23 U.S.C. § 138 ("[T]he Secretary shall not approve any program or project . . . which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials . . ."). Plaintiff fails to articulate why the Secretary has any obligations with respect to the streetcar project. Plaintiff does allege in its Amended Complaint that the streetcar project receives federal funding. However, to support this allegation, in its Opposition Plaintiff relies on a declaration by Defense witness Ronald Nicholson stating that "[t]he H Street & Benning Road Street Car Project . . . is entirely funded with local dollars"—the opposite of Plaintiff's allegation. Pl.'s Opp'n. at 32. Perplexingly, Plaintiff contends that "[a]ssuming the truth of Mr. Nicholson's statement, the District has received federal funding for H Street and Benning Road planning and street construction." *Id.* at 33. Plaintiff relies on no other evidence to support this assertion and there is nothing in the record to rebut the declaration's clear assertion that the portion of the streetcar project at issues here does *not* currently receive federal funding. Accordingly, Plaintiff has failed to state a claim that Defendant has violated the Federal-Aid Highway Program or the U.S. Department of Transportation Act of 1966.

6. <u>D.C. Historic Landmark & Historic District Protection Act of 1978 (Count VIII)</u>

In Count VIII of the Amended Complaint, the Plaintiff contends, without elaboration, that "[t]he D.C. Preservation Review Board's decision to permit the streetcar construction on the grounds of Spingarn was arbitrary, capricious, and an abuse of discretion, and in violation of the D.C. Historic Landmark and Historic District Protection Act of 1978 (D.C. Law 2-144), D.C. Code Title 6, Chapter 11." Am. Compl. ¶ 92. Defendant argues that the Historic Landmark Act does not create a private right of action through which Plaintiff could challenge the Preservation Review Board's decision. Def.'s Mot. at 29. Plaintiff does not dispute that even assuming the Plaintiff can challenge the Preservation Review Board's decision, Plaintiff must seek review before the Mayor's agent, and then petition the District of Columbia Court of Appeals. *See Embassy Real Estate Holdings, LLC v. D.C. Mayor's Agent for Historic Preservation*, 944 A.2d 1036, 1044 (D.C. 2008); D.C. Code §§ 6-1112, 2-510. Moreover, as with the Plaintiff's zoning law claim, the D.C. Circuit discourages federal courts in this District from exercising supplemental jurisdiction over claims challenging administrative decisions by the District of Columbia, assuming Plaintiff could bring the claim at all. *Lightfoot*, 448 F.3d at 399; *see also Hameetman v. City of Chicago,* 776 F.2d 636, 640 (7th Cir. 1985) ("Federal courts have no general appellate authority over state courts or state agencies."). Here, Plaintiff effectively asks this Court to do no more than review the decision of a state agency. Accordingly, Plaintiff has failed to state a claim over which this Court has jurisdiction.

7. Advisory Neighborhood Commission Recommendations (Count IX)

The allegations in Count IX of the Amended Complaint are less than clear, but the thrust of the claim appears to be that the Defendant did not accord "great weight" to ANC 5B's

opposition to the construction of the car barn on the Spingarn campus.[10] *See* Am. Compl. ¶ 95.

ANCs may advise the District of Columbia "with respect to all proposed matters of District government policy including, but not limited to, decisions regarding planning, streets, recreation, social services programs, education, health, safety, budget, and sanitation which affect that Commission area." D.C. Code § 1-309.10(a). Each Commission notified of a proposed District action under section 1-309(b) or (c) "shall consider each such action or actions in a meeting with notice given in accordance with § 1-309.11(c) which is open to the public in accordance with §1-309.11(g). The recommendations of the Commission, if any, *shall be in writing* and *articulate the basis for its decision*." *Id.* § 1-309.10(d)(1) (emphasis added). "The issues and concerns raised in the recommendations of the Commission shall be given great weight during the deliberations by the government entity. Great weight requires acknowledgement of the Commission as the source of the recommendations and explicit reference to each of the Commission's issues and concerns." *Id.* § 1-309.10(d)(3)(A).

The Amended Complaint alleges ANC 5B "voted to oppose the District's proposed streetcar barn construction on the grounds of Spingarn High School. The 5B ANC Commission's official opposition was issued by letter dated October 31, 2012." Am. Compl. ¶

---

[10] In Plaintiff's Opposition, Plaintiff characterizes Count IX as both a claim that Defendant failed to comply with ANC notice requirements as well as the "great weight" requirement. *See* Pl.'s Opp'n. at 36-37. However, Count IX of Plaintiff's Amended Complaint only alleges a violation of the "great weight" requirement. As has been stated before, it is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss. *See Middlebrooks v. Godwin Corp.,* 722 F.Supp.2d 82, 87 n. 4 (D.D.C. 2010); *Perkins v. Vance–Cooks,* 886 F.Supp.2d 22, 29 n. 5 (D.D.C. 2012) ("It is settled law in this circuit that a plaintiff may not raise new allegations in this manner."); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.,*297 F.Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks omitted). Accordingly, the Court will only consider Plaintiff's claim that Defendant violated the "great weight" requirement.

95 (citing "Exhibit # 5"). Plaintiff did not attach any exhibits to the Amended Complaint, so the Court assumes the reference in paragraph 95 is to Exhibit 5 of the original Complaint. However, Exhibit 5 to the original Complaint is a letter dated October 31, 2012, and addressed to the D.C. Preservation Office and Review Board in support of Plaintiff's "Application for Historic Designation of Spingarn High School." Compl., Ex. 5 at 1. The letter states that ANC 5B voted to support Kingman Park's application for Historic Designation of Spingarn High School and sets forth the reasons ANC 5B recommends the Preservation Review Board's approval of Kingman Park's application. *Id.* As part of those reasons, the letter asserts that

> Neither the District Department of Transportation nor the Office of Planning sought the advice and consent of Advisory Neighborhood Commission 5B regarding the plan to build a streetcar maintenance facility on the front lawn of Spingarn Senior High School. The Commission was not given "great weight" in consideration of this matter as required by District of Columbia law.

> Ward 5 citizens residing in the immediate area surrounding Spingarn Senior High School vocally oppose building a streetcar maintenance facility on the front lawn of Spingarn Senior High School or any area abutting or adjacent to the School. Residents in nearby Ward 7, Ward 6 and throughout Ward 5 oppose destroying or altering in any way Spingarn Senior High School's historic vistas for any industrial purpose.

*Id.* at 2. The letter does not state what *ANC 5B* recommends with regards to the construction on the Spingarn campus, it simply indicates that citizens in surrounding Wards are opposed to the construction. Furthermore, the letter does not state that ANC 5B voted on the Spingarn campus construction and does not make any recommendation on the part of ANC 5B that the Preservation Review Board not approve the construction, nor does the letter indicate that the Commission ever issued a written recommendation related to the Spingarn campus construction as required by D.C. Code § 1-309.10(d)(3)(A). Indeed, the only recommendation given by ANC 5B in this letter—and the clear purpose of the letter, including the discussion of the Spingarn

campus construction—is that the Preservation Review Board should approve the *Historic Designation* of Spingarn High School.[11]  It is thus not surprising that the October 31, 2012, letter was addressed to the Preservation Review Board, not the DDOT—the agency responsible for implementing the D.C. Streetcar project.

ANC 5B Commissioner Blacknell indicated in her affidavit attached to the Plaintiff's original complaint that "[t]he 5B ANC Commission [sic] also issued a resolution which opposed the construction of a car barn on the grounds of Spingarn High School," but Plaintiff did not provide a copy of the resolution or any additional details.  Compl., Ex. 4 (Blacknell Decl.) ¶ 9.  In any event, in Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff affirms that the October 2012 letter to the Preservation Review Board constituted the written recommendations to which the District failed to accord "great weight."  Pl.'s Opp'n. at 37.  As this letter does not state the recommendations of the ANC with regards to the Spingarn construction nor was it sent to the agency responsible for implementing the D.C. Streetcar project, the Court dismisses Plaintiff's claim that Defendant failed to give "great weight" to ANC 5B's recommendations regarding the construction on Spingarn campus.

8. D.C. Human Rights Act (Count X)

Plaintiff's final claim, Count X, contends that Defendant violated unspecified provisions of the District of Columbia's Human Rights Act ("DCHRA").  Although Plaintiff does not identify the specific provision on which its claims are based, it does note that the "D.C. Human Rights Act provides in pertinent part":

---

[11]  The Court notes that the Preservation Review Board did comply with ANC 5B's recommendation that the Board approve Kingman Park's application for Spingarn Senior High School's historic designation.  *See* Am. Compl. ¶ 32.

> Except as otherwise provided for by District law or when otherwise lawfully and reasonably permitted, it shall be unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's actual or perceived: race, . . . or place of residence or business.

Plaintiff alleges Defendant intentionally discriminated against African-Americans by constructing the car barn in a predominantly African-American community, disregarding "the historic character of Spingarn High School." Am. Compl. ¶¶ 98-101. Plaintiff further contends that the streetcar project will have a discriminatory effect on African-Americans. *Id.* at ¶¶ 101-105.

Defendant makes a number of arguments in response to this claim, but Plaintiff fails to respond to any of Defendant's arguments. Plaintiff does not dispute Defendant's suggestion that construction on the Spingarn campus does not violate the Act because, assuming the construction alters the view of the campus or surrounding historical sites, "all District residents w[ill] be denied the benefit of an unaltered, unobstructed view of the historic site." Def.'s Mot. at 36. Nor does Plaintiff respond to Defendant's argument that since "the District as a whole is predominantly African American" the DCHRA "cannot be violated simply by the District choosing to build a [car barn] in an area that is predominately African American while not choosing to build a similar facility in a different part of the city" because otherwise "virtually any decision by the District to build a facility of any kind in one quadrant, ward, or neighborhood could be challenged as discriminatory under the DCHRA." *Id.* at 35. Indeed, as Judge Paul L. Friedman held in a similar situation in *Boykin v. Gray*, 895 F.Supp.2d 199 (D.D.C. 2012)

> [I]t cannot be that Section 2–1402.73 is violated simply because the District closes a public assistance facility in one part of the city while failing to close similar facilities in a different part of the city. Under that reasoning, virtually any

decision by the District limiting or restricting services of any kind in one quadrant, ward, or neighborhood could be challenged as discriminatory under the DCHRA . . . . This broad interpretation, which would subject an unimaginable number of routine policy decisions to litigation, cannot credibly be derived from a provision that bars discrimination "on the basis of" place of residence or eighteen other protected traits. . .the language of Section 2–1402.73 signals a focus on the selective denial of benefits to certain persons, based on their place of residence, while those benefits remain available to other persons.

In response, Plaintiff only asserts that Count X "speaks for itself." Pl.'s Opp'n at 37. The Court is persuaded by Defendant's arguments that Plaintiff has failed to sufficiently allege a claim cognizable under the DCHRA. Accordingly, the Court finds that Plaintiff has failed to state a claim that Defendant violated the District of Columbia Human Rights Act.

9. 42 U.S.C. § 1983

Finally, in Plaintiff's Opposition, Plaintiff appears to try to salvage several of its claims for which Defendant contends there is no private cause of action or jurisdiction in this Court by framing these claims as 42 U.S.C. § 1983 claims. Specifically, Plaintiff argues that the Court has jurisdiction pursuant to § 1983 to consider Plaintiff's claims invoking the District of Columbia's Comprehensive Plan (Count IV), District of Columbia Zoning laws (Count V), the D.C. EPA (Count VI), the Federal Aid Highway Act (Count VII), the U.S. Department of Transportation Act of 1966 (Count VII), the D.C. Historic Landmark and Historic District Protection Act (Count VIII), and ANC notice and great weight requirements (Count IX). However, Plaintiff's Amended Complaint—which is far from a model of clarity—could only arguably be interpreted to allege four violations as the basis for § 1983 claims:[12] the District's alleged violation of the

---

[12] As has been noted, Plaintiff's Amended Complaint lacks specificity. Plaintiff appears to allege free standing claims under the Comprehensive Plan, the D.C. Environmental Policy Act, the D.C. Historic Landmark and Historic District Protection Act, and ANC great weight requirements, which the Court has analyzed above. However, the alleged violation of these state laws is also included within Count II, which Plaintiff labels "Violations of Civil Rights Pursuant

Comprehensive Plan, the D.C. EPA, the D.C. Historic Landmark and Historic District Protection Act, and ANC notice and great weight requirements. The Court will only evaluate the viability of these four claims as § 1983 claims and not the three additional claims to which Plaintiff seeks in its Opposition to apply a § 1983 gloss. Such allegations, included for the first time in an opposition to a motion to dismiss, cannot save those claims. *See Jefferies v. District of Columbia,* 917 F.Supp.2d 10, 56 (D.D.C. 2013) ("the Court looks at what the Complaint alleges District officials actually did—apart from the gloss the plaintiff puts on those acts."). "[P]laintiff failed to include these allegations in [its] complaint, and plaintiff may not amend [its] complaint by the briefs in opposition to a motion to dismiss." *Middlebrooks v. Godwin Corp.,* 722 F.Supp.2d 82, 87 n. 4 (D.D.C. 2010), *aff'd,* 424 Fed.Appx. 10 (D.C. Cir. 2011). Accordingly, the Court will only consider whether § 1983 gives this Court jurisdiction over Plaintiff's claims that the District violated the Comprehensive Plan, the D.C. Environmental Policy Act, the D.C. Historic Landmark and Historic District Protection Act, and ANC notice and great weight requirements. Since the Court has held in abeyance Defendant's Motion as to Plaintiff's D.C. EPA claim, the Court shall also hold in abeyance its consideration of Plaintiff's D.C. EPA claim in the context of a § 1983 action.

In its Opposition, Plaintiff only makes the broad, conclusory assertion that this Court has jurisdiction over these claims pursuant to § 1983 because they constitute violations of Plaintiff's Fifth Amendment due process and equal protection rights.[13] Pl.'s Opp'n. at 35, 38-39. "To state

---

to Title 42 U.S.C. § 1983." Since Plaintiff argues in its Opposition that these state law violations are cognizable under § 1983, the Court has analyzed these claims as both free standing claims and § 1983 claims.

[13] Apparently as part of its argument that these claims can be brought in this Court pursuant to § 1983, Plaintiff also discusses Title VI case law, which Plaintiff asserts holds that

a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). "A mere state law violation does not give rise to a substantive due process violation, although 'the manner in which the violation occurs as well as its consequences are crucial factors to be considered.'" *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997) (citing *Comm. of U.S. Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 944 (D.C. Cir. 1988)). "Only (1) a substantial infringement of state law prompted by personal or group animus, or (2) a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983." *George Washington Univ. v. District of Columbia*, 318 F.3d 203 (D.C. Cir. 2003) (citing *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)). The Court finds that none of the state law violations that Plaintiff has alleged rise to the level of qualifying for relief under § 1983. The Court already determined in Part III, Section C-1 that Plaintiff has failed to allege an equal protection claim. The Court also finds that Plaintiff has failed to sufficiently allege that these state law violations deprived Plaintiff's members of their due process rights. As already explained, the D.C. Comprehensive Plan is a non-self-executing set of policy guidelines—not binding policy directives. *See Tenley,* 550 A.2d at 336-37. As a result, the Court cannot fathom how the

---

"disparate impact is actionable either directly or as an implied right of action." *See* Pl.'s Opp'n. at 34, 36. It is unclear to the Court how cases addressing whether disparate impact is actionable in the specific context of Title VI—a statute not at issue in this case—are relevant to Plaintiff's § 1983 argument or any argument that Plaintiff has a cause of action to bring any of these local law claims. Moreover, the principal case on which Plaintiff relies—*Sandoval v. Hagan,* 197 F.3d 484 (11th Cir. 1999)—was explicitly reversed by the Supreme Court, which held in *Alexander v. Sandoval*, 532 U.S. 275 (2001) that there is no private right of action to enforce disparate-impact regulations promulgated under Title VI of the Civil Rights Act of 1964.

violation of a non-binding policy guideline could rise to the level of a substantive due process violation cognizable under § 1983.

As for the District's alleged violation of the D.C. Historic Landmark and Historic District Protection Act claim, Plaintiff claims only that the Preservation Review Board's decision to permit the construction on the grounds of Spingarn campus "was arbitrary, capricious, and an abuse of discretion, and in violation of the D.C. Historic Landmark and Historic District Protection Act of 1978." Am. Compl. ¶ 92. This claim is no more than a claim for this Court to review the actions of a state agency. But as this Circuit has recognized, a § 1983 suit is not one to review the actions of a state agency. *Lightfoot*, 448 F.3d at 398, 399; *see also Hameetman v. City of Chicago,* 776 F.2d 636, 640 (7th Cir. 1985) ("Federal courts have no general appellate authority over state courts or state agencies."). Accordingly, Plaintiff's D.C. Historic Landmark claim is not cognizable under § 1983.

Finally, Plaintiff argues that the District's alleged failure to give ANC Commissioner Blacknell notice of the proposed construction on the Spingarn campus and its failure to give the ANC's recommendations "great weight" in deciding where to construct the car barn are cognizable under § 1983. Even if the District failed to comply with formal notice requirements, Plaintiff concedes that ANC Commissioner Blacknell was orally informed about the Spingarn construction at a March 2012 community meeting. The D.C. Court of Appeals has held that "actual notice to the affected ANC which allows meaningful participation in a proceeding is sufficient to cure merely technical violations of the thirty-day notice requirement of the ANC Act." *Comm. For Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177, 1183 (D.C. 1982) (citing *Shiflett v. Dist. of Columbia Board of Appeals and Review,* 431 A.2d 9, 10-11 (D.C. 1981)). Here, ANC Commissioner Blacknell learned of the proposed construction in

March 2012 and, according to Plaintiff's allegations, had the opportunity to object to the construction at several different public meetings as well as submit to the District a citizens petition and, allegedly, a resolution opposing the construction in the several months prior to the Spingarn campus finally being selected as the location for the car barn.[14] Moreover, although the October 2012 ANC 5B letter to the Preservation Review Board did not contain any ANC recommendation as to the construction on Spingarn campus, but only referenced citizen opposition to the construction, the letter was received by the Preservation Review Board before the Board approved the location and concept for the car barn and it can thus be assumed that the Board was on notice of the ANC's views prior to making any final determinations about the construction. Accordingly, the Court finds that ANC Commissioner Blacknell had the opportunity to meaningfully oppose the construction on Spingarn campus. *See Shiflett*, 431 A.2d at 11 (finding District's failure to comply with notice requirement harmless where petitioners had actual notice of restaurant construction, "met with intervenor's representative to voice their concern," and "have the opportunity now and in the future, even though the restaurant is in

---

[14] Plaintiff alleges in its Amended Complaint that the selection of the Spingarn campus as the location of the car barn was a "done deal" as of December 11, 2011. Am. Compl. ¶¶ 18, 28. Specifically, Plaintiff alleges that "upon information and belief," the D.C. Department of Transportation advised "the Committee of 100 on the Federal City" in August 2013 that the selection of the Spingarn campus as the location of the car barn was a "done deal" as of December 2011. *See id.* It is unclear to the Court what Plaintiff means by the ambiguous term "done deal." Plaintiff's subsequent allegations reference the DDOT's "*proposed* construction" on the Spingarn campus and public meetings to discuss such *proposed* construction, suggesting that Spingarn campus as a *proposed* location for the construction was a "done deal" as of December 2011, but not that a decision had been definitely made to construct on the Spingarn campus as of that date. *See id.* ¶¶ 19, 20, 31 ("On *November 1, 2012*, the D.C. Historic Preservation Board accepted Spingarn Senior High School as the site for the new streetcar car barn and training center that was *proposed* by the District of Columbia Department of Transportation"). Accordingly, the Court finds that the allegations in Plaintiff's Amended Complaint support the conclusion that ANC 5B had the opportunity to meaningfully object to the construction on Spingarn campus.

operation, to present any objections"). As for Defendant's violation of D.C. Code § 1-309.10's "great weight" requirement, which the Court discussed in Part III, Section C-7, Plaintiff failed to allege that it provided the recommendations to which the District is required to give great weight and thus failed to state a claim for relief under D.C. Code § 1-309.10. As a result, the Court finds that Plaintiff cannot state a claim under § 1983 for the violation of either the ANC notice or "great weight" requirements. Accordingly, the Court finds that Plaintiff fails to state a claim under § 1983 for the District's alleged violation of the Comprehensive Plan, the D.C. Historic Landmark and Historic District Protection Act, and ANC notice requirements.

## IV. CONCLUSION

For the foregoing reasons, Defendant's [29] Motion to Dismiss or, in the alternative, for Summary Judgment is GRANTED IN PART and HELD IN ABEYANCE IN PART. Defendant's Motion is GRANTED as to Counts I and III of Plaintiff's Amended Complaint and Counts IV and X in so far as they relate to the overhead wires because Plaintiff failed to establish it has standing to litigate these claims. Defendant's Motion is further GRANTED as to Counts IV, V, and VII-X as Plaintiff fails to state a claim for relief or a claim over which this Court has jurisdiction. The Court further HOLDS IN ABEYANCE Counts II and VI and Plaintiff's 42 U.S.C. § 1983 claim regarding the alleged violation of the District of Columbia Environmental Policy Act of 1989 pending Defendant's production of the Environmental Impact Screening Form and the related agency recommendations and environmental reports. The Court finds that Plaintiff has also failed to meet the strict notice requirements under the Clean Air Act and thus cannot amend its Amended Complaint to include this additional claim. Accordingly, Plaintiff's [33] Motion to Stay and for Reconsideration of the Court's Order Denying Plaintiff's Motion for Leave to File a Second Amended Complaint is DENIED.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE