UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KINGMAN PARK CIVIC ASSOCIATION,<br><br>   Plaintiff,<br><br>      v.<br><br>VINCENT C. GRAY,<br><br>   Defendant. | Civil Action No. 13-990 (CKK) |

**MEMORANDUM OPINION**
(September 29, 2014)

Plaintiff Kingman Park Civic Association ("Kingman Park") filed suit against Vincent C. Gray in his official capacity as the Mayor of the District of Columbia, challenging aspects of the District's plan to construct a streetcar line in the northeast quadrant of the District. Defendant moved the Court to dismiss the Amended Complaint or, in the alternative, to enter summary judgment for Defendant. On May 14, 2014, the Court dismissed all counts of Plaintiff's Amended Complaint, except Counts II and VI, which the Court held in abeyance pending Defendant's production of certain documents related to the environmental impact of streetcar construction on the campus of Spingarn Senior High School. Defendant produced these documents on May 22, 2014, and the Court subsequently ordered the parties to file supplemental briefing addressing Plaintiff's claim that Defendant violated the District of Columbia Environmental Policy Act of 1989, D.C. Code § 8-109.01 *et seq.* ("D.C. EPA") by failing to prepare an Environmental Impact Statement for the construction on the Spingarn campus. Presently before the Court are the parties' supplemental briefs on this discrete issue. Upon

1

consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that Plaintiff has failed to support the claim that Defendant violated the D.C. EPA by not preparing an EIS for the Spingarn construction. As a result, Plaintiff has also failed to present sufficient evidence to support his equal protection claim or a 42 U.S.C. § 1983 claim. Accordingly, the Court GRANTS Defendant's [29] Motion to Dismiss or, in the alternative, for Summary Judgment and dismisses this action in its entirety.

## I.  BACKGROUND

The Court shall only discuss the facts relevant to the immediate decision before the Court as the facts underlying this motion have been detailed at length in the Court's previous opinion *Kingman Park Civic Association v. Gray*, ---F. Supp.2d---, 2014 WL 1920496 (D.D.C. May 14, 2014).

In Count VI of Plaintiff's Amended Complaint, Plaintiff alleges that Defendant violated section 4 of the D.C. EPA by failing to prepare an Environmental Impact Statement ("EIS") regarding the anticipated construction of a streetcar car barn on the Spingarn campus. Am. Compl. ¶¶ 83-85. The car barn will be used to house streetcars while not in operation and will also serve as an operations and maintenance facility. *Id.* ¶ 14. The D.C. EPA provides that

> Whenever the Mayor or a board, commission, authority, or person proposes or approves a *major action* that is likely to have *substantial negative impact on the environment*, if implemented, the Mayor, board, commission, authority, or person shall prepare or cause to be prepared, and transmit, in accordance with subsection (b) of this section, a detailed EIS at least 60 days prior to implementation of the

---

[1] Defendant's Notice in Accordance with the Court's May 14, 2014, Order ("Def.'s Notice"), ECF No. [40]; Defendant's Supplemental Memorandum ("Def.'s Supp. Mem."), ECF No. [44]; Plaintiff's Supplemental Opposition to the Motion to Dismiss or in the Alternative for Summary Judgment and Response to the District's Justification for its Failure to Prepare an Environmental Impact Statement Before Construction of a Streetcar Maintenance Garage, Carwash and Electrical Substation on the Spingarn Senior High School Campus ("Pl.'s Opp'n"), ECF No. [45]; Defendant's Supplemental Reply Memorandum in Further Support of its Motion to Dismiss the Amended Complaint or, in the Alternative, for Summary Judgment (Def.'s Supp. Reply), ECF No. [46].

> proposed major action, unless the Mayor determines that the proposed major action has been or is subject to the functional equivalent of an EIS.

D.C. Code § 8-109.03(a) (emphasis added). Plaintiff alleges that the preparation of an EIS was required because "the proposal would have a major adverse impact" "due to *traffic* and *community impact*," noting that placing the car barn on the Spingarn campus "would involve the streetcar tracks crossing the westbound travel lanes from the median into the yard adjacent to Spingarn High School." *Id.* ¶ 84. (emphasis added). Count VI of Plaintiff's Amended Complaint goes on to list three bullet points of additional alleged "[d]amage that would be result [sic] from excavation and construction work on the Spingarn Site": (1) "The release of dust and other contaminants into the air such as lead, chromium, mercury, arsenic and seimi-volatile [sic] organics;" (2) "The creation of storm water and sewage run-off that will damage over 500 homes;" and (3) "The damage from excavation and construction vibration to over 500 homes." *Id*.

In its May 14, 2014, Memorandum Opinion, the Court held that Plaintiff's reliance on *community* and *traffic* impact was insufficient to state a claim under the D.C. EPA because the D.C. EPA only requires an EIS if the project is likely to have a substantial negative impact on the *environment*, which is defined as "the physical conditions that will be affected by a proposed action, including but not limited to, the land, air, water, minerals, flora and fauna." *See* Mem. Op. (May 14, 2014), ECF No. [39], at 24-25 (quoting D.C. Code § 8-109.02(3)). The Court further held that damage to "over 500 homes" due to "storm water and sewage run-off" and "excavation and construction vibration" could also not trigger the need for an EIS as it focuses on *homes* and not the *environment*. *Id.* at 25. The Court did find, however, that "the release of dust and other contaminants into the air" is an "impact that fits more clearly into the definition of 'environment' set forth in the D.C. EPA." *Id.*

It was unclear to the Court, however, whether this allegation of environmental impact alone amounted to "substantial negative impact" triggering the EIS requirement as neither Plaintiff's Opposition nor Defendant's briefing provided sufficient guidance with respect to this issue. Instead, Defendant simply argued that "the undisputed evidence indicates that the District was not required to prepare an EIS in this instance" and pointed to the District of Columbia Department of Consumer and Regulatory Affairs' ("DCRA") determination, based on its review of the Environmental Impact Screening Form[2] ("EISF"), that the construction on Spingarn campus is "not likely to have substantial negative impact on the environment, and [the] submission of an Environmental Impact Statement (EIS) [was] not required." Def.'s Mot., ECF No. [29], at 27-28. However, at the time of the initial briefing, Defendant had not produced the EISF on which the DCRA relied and Plaintiff, in its Opposition, was requesting discovery of "environmental research documents and files, and documents relevant to the construction of . . . the Spingarn streetcar maintenance facility excavation and construction." Pl.'s Opp'n, ECF No. [30], at 18, 19. Accordingly, the Court found that this claim and Plaintiff's request for discovery would be most expeditiously resolved by Defendant producing the EISF and related agency recommendations and environmental reports. *See* Mem. Op. (May 14, 2014), at 26.

The Court held in abeyance Defendant's Motion as to Count VI pending Defendant's production of the EISF and the related agency recommendations and environmental reports.

---

[2] To determine if a project is "likely to have substantial negative impact on the environment"—thereby requiring the preparation of an EIS—a project proponent is required to complete an Environmental Impact Screening Form ("EISF"). 20 DCMR § 7201.1; *Foggy Bottom Ass'n v. District of Columbia Zoning Commission*, 979 A.2d 1160, 1164 (D.C. 2009). The D.C. EPA's implementing regulations provide that the EISF be filed "with the lead agency for review and determination of whether an EIS is required." 20 DCMR § 7204.2. The lead agency must make a "written determination . . .whether or not the action is likely to have substantial negative impact on the environment, and whether an EIS is required." 20 DCMR § 7205.1. The DCRA has been designated by the Mayor as the "lead agency" having primary responsibility coordinating preparation of an EIS. Def.'s Supp. Mem. at 2.

4

Since Plaintiff's equal protection claim (Count II) depended in part on the viability of Plaintiff's D.C. EPA claim, the Court also held in abeyance Count II. Finally, the Court held in abeyance its consideration of Plaintiff's D.C. EPA claim in the context of a § 1983 action.

Defendant produced the EISF and related reports on May 22, 2014. The Court subsequently ordered supplemental briefing on the sole issue of "whether Defendant violated the D.C. EPA by not conducting an EIS." Order (May 27, 2014), ECF No. [41], at 2. Having received the parties' supplemental briefing, this remaining issue is now ripe for review.

## II. LEGAL STANDARD

As the parties and the Court rely extensively on documents outside Plaintiff's Complaint—notably the EISF and related reports—to resolve Plaintiff's D.C. EPA claim, the Court will treat Defendant's motion as to this remaining claim as a Motion for Summary Judgment. *See Highland Renovation Corp. v. Hanover Ins. Group,* 620 F.Supp.2d 79, 82 (D.D.C. 2009) ("When 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss under Rule 12(b)(6), 'the motion must be treated as one for summary judgment[.]' "). "[W]hen a party seeks review of agency action . . . the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth [for summary judgment] in [Federal] Rule [of Civil Procedure] 56 does not apply because of the limited role of a court in reviewing the administrative record . . . . Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack,* 684 F.Supp.2d 135, 142 (D.D.C. 2010).

To prevail on its D.C. EPA claim, the plaintiff must show that the agency's determination that preparing an EIS for the challenged project was not necessary was "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[3] D.C. Code § 2-510(a)(3)(A); *see also Kegley v. District of Columbia*, 440 A.2d 1013, 1019 (D.C. 1982) (holding that the Superior Court, in reviewing agency action, "uses the precise scope of review [the Court of Appeals] employ[s] in reviewing contested cases"); *accord Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 763 (2004) ("An agency's decision not to prepare an EIS can be set aside only upon a showing that it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " (quoting 5 U.S.C. § 706(2)(A)). An agency's decision may be arbitrary or capricious if any of the following apply: (i) its explanation runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise; (ii) the agency entirely failed to consider an important aspect of the problem or issue; (iii) the agency relied on factors which Congress did not intend the agency to consider; or (iv) the decision otherwise constitutes a clear error of judgment. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S.

---

[3] In its Supplemental Reply, Defendant argues that Plaintiff's claim that the DCRA's determination that an EIS was unwarranted was arbitrary, capricious, or an abuse of discretion is not properly before the Court because Plaintiff's Amended Complaint does not challenge the determination as arbitrary and capricious. The Court finds Defendant's argument both unpersuasive and disingenuous. "Arbitrary and capricious" is the legal standard that the Court must apply to a challenge, like Plaintiff's, to a decision not to prepare an EIS. Defendant itself acknowledges that the decision whether to prepare an EIS is a decision committed to the discretion of an administrative agency and should only be reviewed under the "arbitrary and capricious" standard. Def.'s Supp. Mem. at 2-3. Moreover, in Defendant's response to Plaintiff's Motion for a Preliminary Injunction in July 2013, Defendant argued that Plaintiff was not likely to succeed on its D.C. EPA claim because "Plaintiff has not identified any basis upon which the Court could determine DCRA's finding to be arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." Def.'s Preliminary Injunction Opp'n, ECF No. [8], at 26. Since Plaintiff's Motion for a Preliminary Injunction, the Court has generously read Plaintiff's Amended Complaint as inherently alleging that Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

29, 43 (1983); *accord Jicarilla Apache Nation v. U.S. Dep't of Interior,* 613 F.3d 1112, 1118 (D.C. Cir. 2010).

### III. DISCUSSION

#### A. *Jurisdiction*

As an initial matter, Defendant argues for the first time in its Supplemental Reply that this Court lacks jurisdiction over Plaintiff's D.C. EPA claim for three reasons. The Court is mindful of the fact that Plaintiff has not had an opportunity to respond to any of these jurisdictional arguments due to the exceedingly late stage at which Defendant raised these arguments. Nevertheless, as the Court finds that none of Defendant's arguments bar the Court's review of the merits of Plaintiff's D.C. EPA claim, the Court finds that its consideration of these arguments without affording Plaintiff an opportunity to respond will not prejudice Plaintiff.

First, Defendant argues that the Court lacks jurisdiction to consider Plaintiff's D.C. EPA claim because the D.C. EPA "does not provide an independent right of judicial review of an agency's written determination with respect to an EISF, but rather only contemplates judicial review "[w]here an EIS is prepared[.]" Def.'s Supp. Reply at 4. In support of this argument, Plaintiff cites to D.C. Code § 8-109.08 which states:

> Where an EIS is prepared in connection with the issuance or approval of a lease, permit, license, certificate, or any other entitlement or permission to act by a District government agency that is subject to administrative or judicial review under applicable laws or regulations, the administrative or judicial review shall be governed by the applicable laws and regulations.

Although Defendant attempts to construe this provision, which is labeled "Judicial Review," as limiting judicial review to EISes that have been prepared, this provision does little more than clarify the laws and regulations which shall govern review of an EIS. This provision no more establishes a right to judicial review of an EIS than it precludes review of an agency's failure to

7

prepare an EIS. Accordingly, the Court rejects Defendant's argument based on this statutory provision that the D.C. EPA does not provide an independent right of judicial review of an agency's decision not to prepare an EIS.

Defendant next argues that Plaintiff's challenge to the DCRA's determination is time barred under the District of Columbia's rules providing for judicial review of agency action. Def.'s Supp. Reply at 4. Defendant cites to District of Columbia Superior Court Civil Rule 1 which provides that an appeal to the Superior Court of the District of Columbia of an agency action must be made "within 30 days after service of formal notice of the final decision to be reviewed or within 30 days after the decision to be reviewed becomes a final decision." Super. Ct. Civ. R. Agency Review 1. Defendant's reliance on this rule, however, is misplaced for two reasons. First, this rule applies to appeals under the District of Columbia's Merit Personnel Act—a statute not at issue here. Second, procedural rules of the local District of Columbia courts have no impact on this federal Court's jurisdiction. Accordingly, the Court rejects Defendant's second jurisdictional argument.

Finally, Defendant argues that the D.C. Circuit discourages courts in this District from exercising supplemental jurisdiction over claims challenging administrative decisions by the District of Columbia. Def.'s Supp. Reply. at 4. It is true that the D.C. Circuit in *Lightfoot v. District of Columbia*, 448 F.3d 392 (D.C. Cir. 2006), held that it "might" be "unwise to exercise supplemental jurisdiction over [a D.C. Administrative Procedures Act] claim. 448 F.3d at 399. The language of this case makes clear, however, that a federal district court is by no means barred from exercising supplemental jurisdiction over a District of Columbia administrative decision. *Id.* (acknowledging that courts in the D.C. Circuit have not been consistent in declining to exercise supplemental jurisdiction over District of Columbia administrative claims).

8

Particularly where, as here, the Court finds that there is no merit to any of Plaintiff's attacks to Defendant's administrative determination, this Court finds there is no problem with exercising supplemental jurisdiction even where exercising such jurisdiction is otherwise discouraged. Accordingly, the Court shall exercise supplemental jurisdiction over Plaintiff's claim that Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

### B. *Defendant's Decision Not to Prepare an EIS*

In Plaintiff's Supplemental Opposition, Plaintiff presents two overarching arguments for why Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. First, Plaintiff argues that Defendant was required to prepare an EIS regardless of the environmental impact by the Spingarn construction due to the nature of the project and the fact that the District of Columbia is governed by a Comprehensive Plan. Second, Plaintiff points to five issues to which, Plaintiff contends, Defendant either did not give proper consideration or gave false or misleading information: (1) dust and particle pollutants, (2) noise and vibration, (3) flood zone and storm water run-off, (4) traffic congestion, and (5) electromagnetic radiation and electrical current.

As Plaintiff did not allege in his Amended Complaint that "electromagnetic radiation and electrical current" were potential environmental impacts warranting the preparation of an EIS, *see* Am. Compl. ¶¶ 83-85, the Court will not consider this argument.[4] *See Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012) ("It is settled law in this circuit that a plaintiff may not raise new allegations in [his Opposition]."). Moreover, in its May 14, 2014, Memorandum Opinion, the Court already determined that Plaintiff's allegation that traffic

---

[4] Moreover, in its May 14, 2014, Memorandum Opinion, the Court found the health risk due to electromagnetic radiation created by the streetcars was, at best, speculative, even according to the study relied upon by Plaintiff. *See* Mem. Op. (May 14, 2014), at 15-16.

congestion will have an impact on the *community* does not support Plaintiff's claim that Defendant was required to prepare an EIS. Mem. Op. (May 14, 2014), at 24. Since Plaintiff simply reiterates this argument in its Supplemental Opposition, the Court will not reconsider this argument. The Court will also not consider Plaintiff's arguments as they relate to noise impact or flood zone concerns since Plaintiff made no allegations regarding either of these impacts in Count VI of its Amended Complaint. *See Perkins*, 886 F. Supp. 2d at 29 n.5.

Accordingly, the Court will only consider in depth (1) whether Defendant was required to prepare an EIS regardless of whether there was any potential environmental impact by the Spingarn construction and (2) whether Defendant's consideration of the environmental impact of dust and particle pollutants, vibration, and storm water run-off from the construction on Spingarn campus shows Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

### 1. *Preparing an EIS Regardless of Environmental Impact*

Plaintiff contends that the Supreme Court held in *Kleppe v. Sierra Club*, 427 U.S. 390 (1976), that "where a comprehensive plan is prepared covering a particular location, the development of that specific area or location should require the preparation of an environmental impact statement." Pl.'s Supp. Opp'n at 4. Because a Comprehensive Plan exists for development in the District of Columbia that covers the Spingarn campus area, Plaintiff argues that, per *Kleppe*, preparation of a full EIS is automatically required for any development on Spingarn campus. *Id.* at 5. The Court finds Plaintiff's reading of *Kleppe* misguided. In *Kleppe*, the only issue before the Court was whether the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*—a statute not implicated in the present case—required an EIS to be prepared for the *entire* Northern Great Plains region in light of the proposed development in that case. 427 U.S.

at 398 (emphasis added). The Court only considered the *necessary scope* of the EIS. *See id.* at 399. The Court held that where a proposed major federal action was of regional scope or part of a larger comprehensive plan, any EIS prepared in relation to that action should also be of regional scope. *Id.* The Court did not hold that a major action related to a comprehensive plan necessarily requires an EIS.

Plaintiff's reading of *Kleppe* would require preparation of an EIS for any project at a location covered by the District's Comprehensive Plan, regardless of the project's impact on the environment. This reading would render superfluous the D.C. EPA's clear language that an EIS is required for "major actions *likely to have substantial negative impact on the environment*[.]" D.C. Code § 8-109.03(a) (emphasis added). Accordingly, the Court finds that the holding in *Kleppe* in no way requires Defendant to prepare an EIS for the Spingarn construction solely because the District has a Comprehensive Plan.

Plaintiff also argues that the DDOT Environmental Policy and Process Manual and DC Municipal Regulations require Defendant to prepare an EIS for the Spingarn construction, regardless of the project's impact on the environment. Pl.'s Supp. Opp'n at 6-7. Plaintiff points to language in the DDOT Manual which states that "[a]n EIS is prepared for projects that are defined under 23 CFR 771.115, or for which FHWA [the Federal Highway Administration] has determined individually that an EIS is required. Some examples of the types of projects normally requiring the preparation of an EIS include: . . . [n]ew construction or extension of fixed rail transit facilities." *DDOT Environmental Policy and Process Manual*, § 8.1.3. Plaintiff also points to language in the D.C. Municipal Regulations, stating that it is a District policy to "[r]equire full environmental impact statements for major transportation projects,

11

including new roadways, bridges, [and] *transit systems* . . . ." 10-A DCMR § 403.7 (emphasis added).

The Court rejects Plaintiff's interpretation of the DDOT Manual and the municipal regulations as requiring an EIS for the Spingarn construction simply because it is a transit project. Most importantly, it is well-established law that policy manuals and agency guidelines do not have force of law over statutes such as the D.C. EPA. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (explaining that "policy statements, agency manuals, and enforcement guidelines" all "lack the force of law"); *Jolly v. Listerman*, 672 F.2d 935, 940-41 (D.C. Cir. 1982) (explaining that "not every piece of paper emanating from" an agency is "a binding rule," especially where the language is more "informative" than "directive or mandatory" (citation omitted)). In addition, the DDOT Manual only provides that the construction of rail transit facilities will "*normally*" require an EIS. *DDOT Environmental Policy and Process Manual*, § 8.1.3 (emphasis added).[5] The Manual simply lists rail transit facilities as one of several examples of projects that *may likely* require an EIS, not projects that by definition require an EIS. The Manual in no way suggests that it trumps the language of the D.C. EPA demarcating the instances in which an EIS is required; indeed, its use of the term "normally" recognizes that there are other considerations to be taken into account in determining whether an EIS is required.

As for the D.C. Municipal Regulation to which Plaintiff cites, this provision is part of the District of Columbia Comprehensive Plan. As the Court has previously recognized, the D.C. Comprehensive Plan is "a non-self-executing set of policy guidelines—not binding policy directives." Mem. Op. (May 14, 2014), at 35 (citing *Tenley & Cleveland Park Emergency Comm. v. D.C. Bd. Of Zoning Adjustments*, 550 A.2d 330, 336-37 (D.C. 1988). Thus, the

---

[5] *Available online at*: http://ddot.dc.gov/page/ddot-environmentalpolicy-and-process-manual-0 (last visited September 29, 2014).

12

provision's seemingly mandatory language "requir[ing]" a full EIS for transit system projects, is no more than a policy guideline that does not trump the clear statutory language of the D.C. EPA. Accordingly, the Court rejects Plaintiff's argument that the DDOT Environmental Policy and Process Manual or D.C. Municipal Regulations require an EIS for the Spingarn construction project regardless of the project's environment impact.

2. *Alleged Insufficiencies in the EISF*

    a. *Dust and Particle Pollutants*

Plaintiff argues that Defendant's decision not to prepare an EIS was arbitrary and capricious because it was based on an EISF that fails to address the level of dust and pollutants that will be generated from the construction and use of the streetcar facility. Pl.'s Supp. Opp'n at 9. Specifically, Plaintiff alleges that "[n]owhere in the District's Air Quality Analysis Technical Report [AQATR] does the defendant address the level of dust and pollutants released into the environment surrounding Spingarn and the residents adversely affected by the construction and site location." *Id.* at 9-10. Plaintiff, however, does not point to any evidence to support its apparent conclusion that dust and pollutants will be released into the environment and have a significant environmental impact from the construction or use of the car barn on the Spingarn campus. Instead, Plaintiff only posits a question, inquiring about the "affect [sic] [ ] the dust and air particles [will] have on nearby residents." *Id.* at 10. Although the AQATR does not address particle pollution due to *construction* on the Spingarn campus, it does, contrary to Plaintiff's broad assertion, evaluate particle pollution in connection with the eventual operation of the streetcar project. The AQATR states that air quality monitoring data "indicates compliance with current [National Ambient Air Quality Standards]" and that "project implementation would result in a slight *decrease* in local diesel-related emissions of $PM_{2.5}$

13

[particles], helping to contribute to the trend of improving local air quality." ECF No. [40-2], at 71-72 (emphasis added).

As for particle pollution due to the construction on the Spingarn campus, the reports supporting the EISF show that soil samples taken from the Spingarn campus did not reveal the presence of any contaminant in a concentration considered a significant risk to human health or the environment and thus presented "no significant indicators of environmental concern."[6] ECF No. [40-2], at 222. The Court also notes that Defendant is required by the District Department of the Environment to control "fugitive dust" throughout the construction. *See* 20 DCMR § 605; ECF No. [40-3], at 16. In light of this evidence and the fact that Plaintiff has failed to point to any contrary evidence of concerning dust and particle pollution from the construction or use of the streetcar project on the Spingarn campus, the Court finds that Plaintiff has produced de minimis, if any, evidence to support its claim that Defendant's determination not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

---

[6] Plaintiff attaches to its Supplemental Opposition a declaration by Harry H. Herman, Jr., an engineering consultant, which raises concerns about the standards Defendant used to assess the soil contamination on the Spingarn campus. *See* Pl.'s Supp. Opp'n, Ex. 3 (Herman Decl.), ECF No. [45-3]. Mr. Herman contends that Defendant's use of the State of Maryland Department of the Environment standards for assessing the concentrations of metals in soil samples is "erroneous and misplaced" because "[s]oil condition standards for Maryland cannot be equated to those of the District of Columbia and specifically the Kingman Neighborhood." Herman Decl. ¶ 5. Mr. Herman claims that the U.S. EPA standards are the proper measure for soil contamination. *Id.* ¶ 6. Mr. Herman also argues that Defendant is improperly using "standards for industrial soil screening levels at the Spingarn site rather than standards for residential soil screening levels." *Id.* ¶ 14. The Court finds that Mr. Herman's declaration does not support a finding that it was arbitrary and capricious for Defendant to rely on its soil contamination study in determining that the preparation of an EIS was unwarranted. First of all, Plaintiff does not make use of Mr. Herman's declaration in its Opposition or make any of these arguments about proper standards in its Opposition. More importantly, Mr. Herman offers no support or even explanation for his conclusions beyond the bald assertions detailed above. Moreover, Mr. Herman does not specifically set forth what the proper standards would be nor does he in any way suggest that the soil contamination levels on the Spingarn campus would have exceeded those standards.

### b. *Vibration and Storm Water Run-Off Concerns*

At the outset, the Court notes that, in its May 14, 2014, Memorandum Opinion, the Court already determined that Plaintiff's allegations that "storm water and sewage run-off" and "excavation and construction vibration" will damage "over 500 homes" could not "trigger the need for an EIS as they focus on *homes* and not the *environment*." Mem. Op. (May 14, 2014), at 25. Apparently in response to the Court's holding, Plaintiff argues in its Supplemental Opposition that damage to "approximately 500 homes resulting from the Spingarn streetcar construction would constitute damage to the land as a physical condition of the environment" and thus falls under the D.C. EPA's definition of "environment." Pl.'s Supp. Opp'n at 3. Although Plaintiff cites the D.C. EPA's definition of environment,[7] which is defined as including "land," the statutory language in no way clearly includes homes within the term "land," and Plaintiff cites to no other authority supporting such a reading.

In any event, even if the Court were to adopt Plaintiff's unsupported reading of the D.C. EPA, the Court finds that Plaintiff's arguments regarding Defendant's consideration of vibration and storm water run-off concerns do not support a finding that Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

As for vibration concerns, Plaintiff alleges that "nowhere in the District's noise and vibration study does the District analyze the effect on the residents of Langston Dwellings Apartments or on the residential homes located directly across the street from Spingarn on Benning Road N.E." Pl.'s Supp. Opp'n at 11. The Court finds Plaintiff's assertion directly contradicted by the record. The "Noise and Vibration Technical Report for H Street Benning Road Streetcar Project," a study prepared in relation to the EISF, clearly reflects that analyses

---

[7] The D.C. EPA defines "environment" as "the physical conditions that will be affected by a proposed action, including but not limited to, the land, air, water, minerals, flora and fauna." D.C. Code § 8-109.02(3).

were conducted of the vibration impact of the streetcar and Spingarn construction on residential homes located near the Spingarn campus. *See* ECF No. [40-2], at 110-11, 116-118. Accordingly, the Court finds that Plaintiff has failed to present any evidence that Defendant's decision not to prepare an EIS was arbitrary, capricious, or an abuse of discretion because Defendant did not sufficiently evaluate vibration concerns.

As for storm water run-off concerns, nearly all of Plaintiff's arguments are focused on ground and surface water contamination. However, Plaintiff's Amended Complaint focused exclusively on "storm water and sewage run-off that will damage over *500 homes*." Am. Compl. ¶ 84 (emphasis added). As the allegations about water contamination were not raised in Plaintiff's Amended Complaint the Court will not consider them. *See Perkins*, 886 F. Supp. 2d at 29 n.5. Plaintiff does make one argument that the Court will generously construe as addressing the potential impact of water run-off on nearby homes. Plaintiff contends that the EISF incorrectly states that there are no springs or streams within 100 feet of the project because the District's own "Geoarchaeological Survey – H Street/Benning Road Street Car Project" states that "the 1945 and 1951 USGS topographic map [sic] show a 0-Order stream dissecting the natural ground surface near this location." Pl.'s Supp. Opp'n at 12. Plaintiff argues that Defendant's decision not to prepare an EIS was arbitrary, capricious, and an abuse of discretion because Defendant failed to consider the effect that construction "will have on the flow of the underground stream, and damage to the physical environment in Kingman Park." *Id*. at 12-13.

The Court finds that Plaintiff has failed to present evidence from which a reasonable trier of fact could conclude that there is currently a stream flowing under the Spingarn location. Plaintiff only points to the statement in the Geoarchaeological Survey that "[t]he 1945 and 1951 USGS topographic maps show a 0-order stream flowing under this area"—evidence that by itself

does not support the conclusion that such a stream, which is the smallest order of stream, continues to flow over sixty years later. ECF No. [40-2], at 43. Moreover, the next sentence in the Geoarchaeological Survey clearly states that "[c]onstruction of the school apparently included the filling of this area," presumably referring to the Spingarn campus. *Id.* at 44. As a result, the Court finds that Plaintiff has presented de minimis, if any, evidence to support its claim that Defendant made a false statement on the EISF or failed to consider the effect of construction on the flow of the underground stream. Accordingly, Defendant's decision not to prepare an EIS cannot be considered arbitrary, capricious, or an abuse of discretion on this basis.

### c. Conclusion

As Plaintiff has presented de minimis, if any, evidence that Defendant failed to properly consider any environmental concern—much less a concern presenting a potentially significant impact on the environment—in evaluating whether an EIS was required, the Court finds that Plaintiff has failed to show that Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Accordingly, the Court enters summary judgment in Defendant's favor on Count VI of Plaintiff's Amended Complaint.

### C. Equal Protection and § 1983 Claims

Since the Court finds that Plaintiff has failed to support its claim that Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, the Court also finds that Plaintiff has failed to state an equal protection or a § 1983 claim as they rely on the Court concluding that Defendant violated the D.C. EPA.

As the Court explained in its May 14, 2014, Memorandum Opinion, Plaintiff presented two types of equal protection claims in its Amended Complaint. The version the Court held in abeyance alleged that the decision to construct the car barn on the Spingarn campus was based

17

on the fact that the Kingman Park community is predominantly African-American. *See* Mem. Op. (May 14, 2014), at 20. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1977). As part of this inquiry, the Court considers, among other things, (1) whether the impact of the official action "bears more heavily on one race than another"; (2) "[t]he historical background of the decision"; (3) "[t]he specific sequence of events leading up to the challenged decision," including whether the defendant departed from the "normal procedural sequence"; (4) "[s]ubstantive departures" from factors normally considered in reaching a decision; and (5) the administrative history of a decision. *Id.* at 266-268. Plaintiff alleges five factors that demonstrate the District's decision to construct the car barn on the Spingarn campus was motivated by the fact that Kingman Park is predominantly African-American. Mem. Op. (May 14, 2014), at 20-21. Defendant's alleged violation of the D.C. EPA for failing to prepare an EIS was one of these factors. As the Court has found that Defendant's decision not to prepare an EIS was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, this factor does not lend weight to the conclusion that Defendant acted with a discriminatory purpose in constructing the car barn on the Spingarn campus. In its May 14, 2014, Memorandum Opinion, the Court addressed the other four factors alleged by Plaintiff and found that only one—the District's failure to notify ANC Commissioner Blacknell of the proposed construction in violation of D.C. Code § 1309.10 ANC notice requirements—was sufficient to support the conclusion that Defendant departed from the "normal procedural sequence" in selecting the Spingarn campus for the car barn. Mem. Op. (May 14, 2014), at 21-22. However, the Court found this allegation, by itself, insufficient to raise an inference of invidious discriminatory

purpose. *Id.* at 22. As this allegation is now the only allegation that could even suggest a discriminatory purpose, the Court finds that Plaintiff has failed to state an equal protection claim.

Plaintiff's 42 U.S.C. § 1983 claim based on Defendant's alleged violation of the D.C. EPA also lacks merit. As the Court explained in its prior opinion, "[t]o state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). "A mere state law violation does not give rise to a substantive due process violation, although 'the manner in which the violation occurs as well as its consequences are crucial factors to be considered.'" *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997) (citing *Comm. of U.S. Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 944 (D.C. Cir. 1988)). "Only (1) a substantial infringement of state law prompted by personal or group animus, or (2) a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983." *George Washington Univ. v. District of Columbia*, 318 F.3d 203 (D.C. Cir. 2003) (citing *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)). As Plaintiff has produced de minimis, if any, evidence from which a reasonable trier of fact could conclude that Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, the Court finds that Defendant's decision not to prepare an EIS does not rise to the level of qualifying for relief under § 1983.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to present sufficient evidence to support its claim that Defendant's decision not to prepare an EIS was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Accordingly, the Court enters

judgment in Defendant's favor on Count VI of Plaintiff's Amended Complaint. As Plaintiff has failed to show that Defendant violated the D.C. EPA by failing to prepare an EIS, Plaintiff's § 1983 claim which relies on that alleged violation must also be dismissed. Likewise, Plaintiff's equal protection claim (Count II) must be dismissed since Plaintiff has failed to point to evidence that would allow a reasonable trier of fact to infer discriminatory purpose in Defendant's decision to construct a car barn on the Spingarn campus. Accordingly, Defendant's [29] Motion to Dismiss or, in the alternative, for Summary Judgment is GRANTED.

>  */s/*
> **COLLEEN KOLLAR-KOTELLY**
> UNITED STATES DISTRICT JUDGE